William MOORE; Ross Carlock; Almut Carlock; Judy Cates; John Cates; Elsie Claverie; Raymond Claverie; Frank Claverie; Phyllis Claverie, et al., Plaintiffs–Appellants,

v.

KAYPORT PACKAGE EXPRESS, INC.; Celani, Celani & Associates, Inc.; Tax and Financial Programming, Inc.; Portfolio Programming, Inc.; Miller, Balter & Company; Bernard A. Minkow, a Law Corporation; Scott Spolin, a Law Corporation; F. George Celani, an Individual; Aaron M. Binder, et al.; Walter Uhrman; G. Kirk Ellis, Defendants–Appellees.

No. 88–5564.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 1988.

Decided Sept. 6, 1989.

and not subject to immediate appeal. *Rogers,* 262 F.2d at 182. *See supra* n. 13.

James D. Murray, Los Angeles, Cal., for plaintiffs-appellants.

Donald C. Erickson and Conrad R. Aragon, Lawler, Felix & Hall, Los Angeles, Cal., for defendants-appellees Tax & Financial Programming, Inc. and Portfolio Programming, Inc.

Martin K. Deniston, Edelman & Dicker, Los Angeles, Cal., for defendants-appellees Jack Miller, Max Balter and Miller, Balter & Co.

Peter B. Gelblum and Elia Weinbach, Mitchell, Silberberg & Knupp, and Diana Greene Gordon, Phillips, Nizer, Benjamin, Krim & Ballon, Los Angeles, Cal., for defendants-appellees Bernard A. Minkow and Bernard A. Minkow, a Law Corp.

Kenneth A. Holland and Eric L. Troff, Musick, Peeler & Garrett, Los Angeles, Cal., for defendants-appellees Scott Spolin and Scott Spolin, a Law Corp.

John A. Blue and Stanley L. Friedman, Adams, Duque & Hazeltine, Los Angeles, Cal., for defendants-appellees Walter Uhrman and G. Kirk Ellis.

Before HALL, WIGGINS and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Defrauded investors who lost money in the purchase of unregistered securities sued the principals involved, as well as various accountants, lawyers and stockbrokers. The investors' second amended complaint was dismissed as against the accountants, lawyers and stockbrokers; however, they obtained judgment against the principals for $854,722.85 plus attorney fees of $284,722.85. The principals are F. George Celani, Aaron M. Binder, Kayport Package Express, Inc., and Celani, Celani & Celani Associates, Inc. They do not appeal. The investors do. They contend the district court erred in dismissing their second amended complaint against the accountants, lawyers and stockbrokers, and in twice denying leave to file a third amended complaint. We affirm in part and remand in part.

### BACKGROUND

The principals organized tax shelter limited partnerships. Limited partnership interests in these partnerships were securities within the meaning of the federal securities laws. The limited partnership interests were not registered, nor were they exempt from registration. In 1981 and 1982 sales of these limited partnership interests totaled $3.8 million. Not only did the principals fail to register the limited partnership interests, they engaged in fraudulent practices and made fraudulent representations in connection with sales of the interests. The investors bought the interests (the "securities"), lost money, and in September 1983 they filed their initial complaint. They alleged violations of section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l* (2), and various pendent state causes of action. Before any responsive pleading was filed, they filed their first amended complaint.

Several of the accountant and lawyer defendants filed motions to dismiss the first amended complaint under Fed.R. Civ.P. 12(b)(6) ("rule 12(b)(6)"), asserting that plaintiffs had failed to state any claim

on which relief could be granted and had failed to plead fraud with the specificity required by Fed.R.Civ.P. 9(b) ("rule 9(b)"). The district court granted these motions with leave to amend. The court's order specified the deficiencies of the first amended complaint and outlined the manner in which the complaint should be amended. The court noted that the complaint was stated in general and conclusory terms, and was devoid of facts supporting the charges of fraud as to the moving defendants. Further, the court ruled that under the authority of *Hokama v. E.F. Hutton and Co.*, 566 F.Supp. 636 (C.D. Cal.1983), and *SEC v. Murphy*, 626 F.2d 633 (9th Cir.1980), the investors had not alleged facts to show that the accountant and lawyer defendants had been a substantial factor in the securities transactions; therefore these defendants were not subject to liability under section 12(2) of the Act.

The investors filed their second amended complaint in February 1984. The accountant and lawyer defendants, now joined by the stockbroker defendants, brought motions to dismiss. On grounds similar to those previously stated, the district court granted essentially all of these motions. The court dismissed the section 12(2) federal claim against the accountant and lawyer defendants, and dismissed the pendent state claims against these defendants and against the stockbroker defendants.

In May 1984, the investors sought leave to file a third amended complaint. In their proposed third amended complaint accompanying their motion, the investors realleged their section 12(2) claim, this time

adding the stockbrokers as defendants. They also introduced new federal claims (1) under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ("section 10(b)"), and rule 10b–5 thereunder, 17 C.F.R. § 140.10b–5 ("rule 10b–5"); and (2) under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c).[1] The court denied leave to file the third amended complaint. The court explained that the section 12(2) claim was subject to dismissal because it lacked allegations of any facts to show that any of the accountants, lawyers or stockbrokers had been in privity with any investor in any sales transaction or had been a substantial factor in bringing about any sales transaction. Further, the court determined that the claim based upon section 10(b) and rule 10b–5 was not pleaded with specificity as required by rule 9(b), and that the RICO claim lacked allegations of a racketeering enterprise injury.

Following the district court's 1984 denial of leave to file the proposed third amended complaint, the investors' case languished in the district court. In mid–1987, the district court, on its own motion, issued an order to show cause why the complaint should not be dismissed for lack of prosecution. On June 13, 1987, the investors filed a second motion for leave to file a third amended complaint.[2] On July 30, 1987, the district court denied this motion, and set a trial date for the case to proceed to trial under the surviving counts of the second amended complaint. The principal defendants defaulted, and the district court entered judgment against them. All counts of the second amended complaint against the accountant, lawyer and stockbroker defen-

---

**1.** At approximately the same time the investors sought leave to file their third amended complaint, the defendants F. George Celani and Aaron M. Binder were indicted for criminal RICO violations, mail fraud, conspiracy and other crimes. Both were convicted in 1985 in the United States District Court for the Central District of Illinois. They were ordered to pay restitution in the amount of $404,000 and sentenced to fifteen and ten years imprisonment, respectively. *United States v. Binder*, 794 F.2d 1195 (7th Cir.), *cert. denied*, 479 U.S. 869, 107 S.Ct. 234, 93 L.Ed.2d 159 (1986).

**2.** The third amended complaint proposed in 1987 was essentially the same as that previously proposed in 1984. The only significant difference in the two versions of the complaint is not relevant to this appeal. The first version alleged a claim under the Investment Advisers Act of 1940, 15 U.S.C. § 80b–6, against the stockbroker defendants. The investors did not reallege this claim in the second version of their proposed third amended complaint. *See Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) (no private right of action for damages under 15 U.S.C. § 80b–6).

dants were dismissed. This appeal followed.

## DISCUSSION

### A. *Dismissal of the Section 12(2) Count in the Second Amended Complaint*

The investors-appellants argue the district court erroneously dismissed their section 12(2) claim which they alleged against the accountant and lawyer defendants in the second amended complaint.[3] Section 12(2) of the Securities Act of 1933 imposes civil liability on a person who offers or sells securities by means of a prospectus or oral communication containing material misrepresentations or omissions. *Jett v. Sunderman*, 840 F.2d 1487, 1491 (9th Cir.1988). The investors contend the accountant and lawyer defendants were liable as "sellers" under section 12(2) because their actions were a substantial factor in bringing about the sales transactions.

This circuit has applied the "substantial factor test" to determine who may be liable as a "seller" under section 12(2), *see, e.g., id.* at 1491–92. Under this test, persons who did not pass title in a sales transaction, and thus were not in privity with the purchaser, may nonetheless be liable as a "seller" if their actions were both necessary to and a substantial factor in bringing about the sales transaction. *Id.* The district court in the present case applied this test. It concluded that the facts alleged in the second amended complaint failed to show that any of the accountant or lawyer defendants had been in privity with any investor or had been a substantial factor in bringing about any of the sales transactions. On this basis, the district court dismissed the investors' section 12(2) claims against the accountant and lawyer defendants.

After the district court's judgment in this case, the Supreme Court defined the scope of the term "seller" under section 12(1) of the Securities Act of 1933. *Pinter v. Dahl,*

486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988). In *Pinter,* the Court held that liability extends beyond those who pass title to a security; those who solicit a purchase may also face liability as "sellers" under section 12(1) of the Securities Act. 108 S.Ct. at 2075–82. Although the Court did not define "solicit," it explained that a person whose motivation is solely to benefit the buyer cannot be deemed to have solicited a purchase. Rather, liability extends only to those who solicit a purchase, "motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Id.* at 2079.

The Court's analysis in *Pinter* was based almost entirely on the language of section 12(1), and the definitions in section 2(3) of the Securities Act of 1933, 15 U.S.C. § 77b(3) ("section 2(3)"). Section 12(1) makes a person liable for the offer or sale of an illegally unregistered security, and section 2(3) defines offer to include a "solicitation of an offer to buy." 15 U.S.C. § 77b(3). According to this language, the Court concluded that those who solicit a purchase are within the ambit of section 12(1). The Court also reasoned that Congress intended to impose liability on persons who solicit, because "solicitation of a buyer is perhaps the most critical stage of the selling transaction." *Id.* at 2078.

The *Pinter* opinion distinguishes those who solicit from those who "merely assist in another's solicitation efforts." *Id.* at 2081 n. 27. The Court rejected the "substantial factor test" because it fails to distinguish between those who solicit and those whose participation is only collateral to the offer or sale. *Id.* at 2080. As to accountants and lawyers, the opinion suggests that the activities of these professionals must be directed toward producing a sale as opposed to merely providing professional services before section 12(1) liability may be imposed. *Id.* at 2081. The Court warns that an application of the broader

---

**3.** The second amended complaint alleged only state causes of action against the stockbroker defendants. It did not contain a section 12(2) claim against these defendants. The section 12(2) claim against the stockbroker defendants was introduced for the first time in the proposed third amended complaint. We discuss the investors' section 12(2) claim against the stockbroker defendants in following part B.

substantial factor test "might expose securities professionals, such as accountants and lawyers, whose involvement is only the performance of their professional services, to § 12(1) strict liability for recission." *Id.*

Appellants contend the substantial factor standard, rather than the *Pinter* standard, should apply to an action brought under section 12(2) against one not in privity with the purchaser of a security. First, appellants attempt to distinguish section 12(1) on the ground that it imposes strict liability, whereas section 12(2) allows a defendant to defend by showing that he or she could not have known of the misrepresentation or omission in the exercise of reasonable care. 15 U.S.C. 77*l* (2). Second, appellants seek to distinguish the subsections by pointing out that section 12(2) is grounded in tort law whereas section 12(1) is grounded in contract law. They argue that the related concepts of proximate cause and substantial factor are thus appropriate in actions under the tort-based section 12(2), even though more involvement is required by *Pinter* in actions under section 12(1).

*Pinter* interpreted only section 12(1), and expressly declined to interpret the scope of "seller" under section 12(2). *Id.* at 2076 n. 20. However, *Pinter*'s analysis of section 12(1) was based on the language of the statute. We begin our analysis of section 12(2) in the same way, and note that pertinent language which is present in and applicable to section 12(2)—"offers or sells" and "purchasing such security from him"—appears by identical language which is present in and applicable to section 12(1).[4] *See Wilson v. Saintine Exploration and Drilling Corp.*, 872 F.2d 1124, 1126 (2d Cir.1989) (citing *Capri v. Murphy*, 856 F.2d 473, 478 (2d Cir.1988); *Schillner v. H. Vaughan Clarke & Co.*, 134 F.2d 875, 878 (2d Cir.1943) ("Clearly the word [sell] has the same meaning in subdivision (2) as in subdivision (1) of section 12.")). Moreover, the section 2(3) definition of "offers" applies with equal force to sections 12(1) and 12(2); and the word "offers" appears as part of parallel introductory language common to both sections 12(1) and 12(2). It seems plain from the statute that the word "offers" means the same thing in both sections.

We also note that while section 12(1) creates liability for the sale of unregistered securities, and section 12(2) creates liability for omissions or misrepresentations in a prospectus or oral communication, the purpose of both sections is to promote full and fair disclosure of information to potential buyers of securities. *Pinter*, 108 S.Ct. at 2078. The shared purpose of these sections strengthens our conclusion that *Pinter*'s reasoning applies equally to both sections. *See Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1113–15 (5th Cir.1988); *Capri v. Murphy*, 856 F.2d at 478. Accordingly, we hold that *Pinter* provides the standard for determining liability as a "seller" under section 12(2) as well as under section 12(1) of the Securities Act of 1933.

■ Under the *Pinter* standard, we now turn to a review of the specific allegations in the investors' second amended complaint. First, they alleged the accountants drafted financial documents and allowed Celani and Binder to use these documents in selling the unregistered securities. Sec-

---

4. Section 12 provides in its entirety:
 Any person who—
 (1) *offers or sells* a security in violation of section 77e of this title, or
 (2) *offers or sells* a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,
 shall be liable to the person *purchasing such security from him,* who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security (emphasis added).

ond, they alleged that the lawyers, each of whom was retained by the principal defendants, drafted or approved the drafting of false or misleading prospectuses and financial documents, and directed the issuance of securities. Specifically, the investors alleged that (1) all the lawyers participated in meetings where the prospectuses and other promotional materials were drafted, (2) lawyers Ellis and Uhrman gave advice and counsel to the owner defendants in preparing prospectuses and other promotional materials, (3) lawyer Minkow drafted tax opinions and allowed these opinions to be included in various promotional materials, and (4) lawyer Spolin allowed his name to be used on promotional materials as general counsel to CCA.

Based on *Pinter*, we conclude that the investors failed to state a claim under section 12(2) against the accountant and lawyer defendants. Under the *Pinter* analysis, these professionals are only subject to section 12(2) liability if they solicited the purchases and were motivated, at least in part, by financial gain. *Pinter*, 108 S.Ct. at 2079. Here, the investors did not allege that the lawyers or accountants played any role at all in soliciting the purchases. Rather, the investors alleged that these defendants performed professional services in their respective capacities as accountants and lawyers. As the Court stated in *Pinter*, "[t]he buyer does not, in any meaningful sense, 'purchas[e] the security from' such a person." *Id.* at 2081 (footnote omitted).

The district court did not err in dismissing the section 12(2) claim against the accountant and lawyer defendants.[5] Nor did the district court err in dismissing the pendent state claims against the accountant, lawyer and stockbroker defendants once the court had dismissed the federal claim on which federal jurisdiction was predicated. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966); *McGlinchy v. Shell Chemical Co.,* 845 F.2d 802, 811 n. 4 (9th Cir.1988).

**B.** *Denial of Leave to File Third Amended Complaint*

The third amended complaint which the investors sought to file in May 1984 realleged claims under section 12(2) against the accountant and lawyer defendants, and for the first time added a claim under section 12(2) against the stockbroker defendants. This proposed complaint also added claims under section 10(b) and rule 10b–5 and RICO against all defendants. Leave to file this complaint was denied in June 1984. The investors again sought leave to file an almost identical third amended complaint by motion filed July 13, 1987. Leave to file this proposed third amended complaint was denied by the district court by its order filed July 30, 1987.

"Denial of leave to amend after a responsive pleading has been filed is reviewed for abuse of discretion, ... but such denial is 'strictly' reviewed in light of the strong policy permitting amendment." *Thomas-*

---

**5.** This conclusion is supported by numerous decisions, both before and after *Pinter*, considering the section 12(2) liability of securities professionals. Courts generally agree that merely performing professional services, without actively soliciting a purchase of the underlying securities, does not give rise to liability under section 12. *See, e.g., Wilson v. Saintine Exploration and Drilling Corp.,* 872 F.2d at 1127 (even attorneys who knowingly prepared a false offering statement must not be subjected to the draconian provisions of section 12 absent compensation from an actual seller for persuading clients to make a particular investment); *Barker v. Henderson, Franklin, Starnes & Holt,* 797 F.2d 490, 494 (7th Cir.1986) (law firm and accounting firm which rendered services in connection with the sale of securities cannot be section 12(2) sellers); *In re Worlds of Wonder Securities*

*Litigation,* 694 F.Supp. 1427, 1435 (N.D.Cal. 1988) (motion to dismiss section 12(2) claim against accountants granted—allegations that accountants finalized registration statement and prospectus and caused registration statement to become effective not sufficient to show accountants were "sellers" within the meaning of section 12); *In re Rexplore, Inc. Securities Litigation,* 685 F.Supp. 1132 (N.D.Cal.1988) (participating in the review, approval or drafting of a private placement memorandum not sufficient by itself to establish seller status); *Ambling v. Blackstone Cattle Co.,* 658 F.Supp. 1459, 1466 (N.D.Ill.1987) (distinguishing between "mere drafting of a misleading prospectus" and "actively soliciting a prospective purchaser"); *Ahern v. Gaussoin,* 611 F.Supp. 1465, 1485 (D. Or.1985) (mere performance of legal services does not give rise to liability under section 12).

*Lazear v. Federal Bureau of Investigation,* 851 F.2d 1202, 1206 (9th Cir.1988) (citations omitted). Federal Rule of Civil Procedure 15(a) provides that a trial court should grant leave to amend "freely when justice so requires."

■ In deciding whether justice requires granting leave to amend, factors to be considered include the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir. 1987). Leave to amend need not be given if a complaint, as amended, is subject to dismissal. *Pan–Islamic Trade Corp. v. Exxon Corp.,* 632 F.2d 539, 546 (5th Cir. 1980), *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981).

### 1. *Section 12(2) Claim*
#### a. *Against the Accountants and Lawyers*

We have concluded that under the *Pinter* standard, the investors' section 12(2) claim against the accountant and lawyer defendants in the second amended complaint failed to state a claim. The section 12(2) claim against the accountant and lawyer defendants in the proposed third amended complaint was virtually identical to the previously dismissed section 12(2) claim. The investors had failed to cure the deficiency in the previously dismissed claim, and the district court did not err in denying leave to file the third amended complaint against the accountant and lawyer defendants by its order filed June 27, 1984, and by its order filed July 30, 1987.

#### b. *Against the Stockbrokers*

As previously stated, the stockbrokers were not named as defendants in the investors' section 12(2) claim in the second amended complaint. It was in the proposed third amended complaint that the investors first attempted to state a section 12(2) claim against the stockbrokers. The investors alleged that the stockbroker defendants "were associated with [Celani, Celani & Associates, Inc. ("CCA")], distributed sales promotion data which contained misrepresentations and omissions of fact as herein alleged, for CCA, sold units in the limited partnerships of [sic] some of the plaintiffs, recommended the CCA limited partnerships and were a substantial and motivating force in the sales to plaintiffs."

The stockbroker defendants argue that these allegations are insufficient to state a claim under section 12(2) because the investors do not allege that the stockbrokers solicited any sales. They rely on *In re Activision Securities Litigation,* 621 F.Supp. 415 (D.C.Cal.1985), in which the court granted a motion to dismiss section 12(2) claims against Morgan Stanley, one of the co-lead underwriters in a public offering. This reliance is misplaced. The district court in *Activision Securities* dismissed the section 12(2) claim against Morgan Stanley because the plaintiffs had not alleged that any of them had "purchased securities from that firm and plaintiffs fail to allege that Morgan Stanley was a 'substantial factor' in the sale." *Id.* at 426. Significantly, the district court in *Activision Securities* refused to dismiss the plaintiffs' section 12(2) claims against any of the other underwriters, and held that a recovery could be made against underwriters who had sold securities to the plaintiffs, provided the other elements of the section 12(2) claims were established. *Id.* at 426.

In the present case, the charging paragraph of the investors' section 12(2) claim against the stockbrokers alleges that the stockbrokers "sold units in the limited partnerships [to] some of the plaintiffs...." This allegation charges a violation of section 12(2) in the language of the statute as to *some* of the investors. *See* 15 U.S.C. § 77*l*(2) ("Any person who ... sells a security ... which includes an untrue statement of a material fact or omits a material fact ... shall be liable to the person purchasing such security from him...."). With regard to the investors in general, it is alleged that the stockbrokers "distribut-

ed sales promotion data," "recommended the ... limited partnership[ ]" interests and were a "substantial and motivating force in the sales to" them. While this is not a model form of pleading a section 12(2) claim, it satisfies the short and plain statement rule of Rule 8(a)(2) which provides that a pleading which sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief...." *Cf. Harelson v. Miller Financial Corp.*, 854 F.2d 1141, 1142 (9th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 274, 102 L.Ed.2d 263 (1988) (salesman did not personally seek out customers but used a company brochure and "presented the basic facts necessary to effectuate a sale"; solicitation under section 12(2) found to exist).

■ We conclude that viewing the allegations against the stockbrokers in their totality, the investors stated a section 12(2) claim against them in the proposed third amended complaint. But this does not end our inquiry of whether the district court erred in denying leave to file the third amended complaint.

In its order denying leave to file the third amended complaint, the district court noted that "undue delay, bad faith or dilatory motive" were also factors to consider. But the district court did not base its ruling on any of these grounds. The stockbrokers argue that notwithstanding this omission, undue delay is demonstrated by the fact that the initial complaint was filed in September 1983, and the motion to file the third amended complaint was not filed until May 1984, a lapse of eight months. The stockbrokers urge that we affirm the district court because of this "undue delay."

Based upon the record before us, we cannot make our own independent determination whether under the circumstances the delay was "undue," or whether the motion to file the third amended complaint was made "in bad faith" or with a "dilatory motive." These are matters which the district court should consider and decide in the first instance in the exercise of its discretion. It has not done so, and a remand to the district court for this purpose is appropriate.[6]

In July 1987, the investors again sought leave to file a third amended complaint to set forth a section 12(2) claim against the stockbroker defendants. The district court denied this motion for the same reasons it had denied the earlier motion in June 1984, and because of the intervening three years of inactivity. As to the section 12(2) claim against the stockbroker defendants, however, neither the investors' attempt to reassert this claim in 1987, or the court's second rejection of it, alters our conclusion that the district court should not have rejected the section 12(2) claim on the basis that it was insufficiently pleaded. The three years of inactivity from 1984 to 1987 also has no effect on what we have concluded was the erroneous ruling by the district court in 1984.

### 2. *Section 10(b) and Rule 10b–5 Claims*

The third amended complaint also introduced a section 10(b) and rule 10b–5 claim against all defendants.[7] In denying leave to file the proposed third amended complaint, the district court determined that these claims were subject to dismissal be-

---

6. The district court also stated in its order denying leave to file the third amended complaint that "leave to amend is not appropriate" because of the investors' "repeated failure to cure the deficiencies in the complaint, and the existence of the same defects in the proposed third amended complaint." As we have noted, however, the plaintiffs had not previously attempted to state a section 12(2) claim against the stockbrokers. Therefore, this comment must have been directed at the investors' previous attempts to state section 12(2) claims against the accountants and lawyers.

7. Rule 10b–5, promulgated under section 10(b) of the Securities Act of 1934, 15 U.S.C. § 78j(b), makes it unlawful for any person: (a) to employ any device, scheme or artifice to defraud, (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) to engage in any act, practice or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b–5.

cause the fraud alleged was not pleaded with the particularity required by rule 9(b).

Appellants assert they have met the requirements of rule 9(b) by pleading the misrepresentations, rather than the defendants' conduct, with particularity. Appellants further contend that because this case involves corporate fraud, allegations based on information and belief are satisfactory and fraudulent conduct need not be attributed to individual defendants. Finally, the appellants argue it would be substantially unfair to strictly apply the particularity requirement in this case because the matters pleaded are within the knowledge of the defendants and not known to the plaintiffs.

 Rule 9(b), which applies to securities actions brought under section 10(b) and rule 10b–5, requires particularity in pleading the circumstances of the alleged fraud. *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987) (citing *Semegen v. Weidner,* 780 F.2d 727, 734–35 (9th Cir.1985)). A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations. *Id.* While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient. *Id.*

 In the present case, the section 10(b) and rule 10b–5 claims in the investors' proposed third amended complaint do not allege the time, place or nature of the defendants' allegedly fraudulent conduct. The complaint bases its allegations on information and belief, and fails to attribute particular fraudulent statements or acts to the individual defendants.

We recently reviewed the particularity requirements in allegations of corporate fraud. *Wool,* 818 F.2d 1433. In *Wool,* plaintiffs who had purchased Tandem stock brought an action under, *inter alia,* section 10(b) and rule 10b–5. Their complaint alleged that defendants had fraudulently inflated the market price of Tandem securities before the plaintiffs' bought them. The defendants challenged the allegations because they were based on information and belief, and failed to specify the conduct of each individual defendant. *Id.* at 1439–40.

In *Wool,* we explained that allegations of fraud based on information and belief usually do not satisfy the particularity requirements under rule 9(b). *Id.* at 1439. However, the rule may be relaxed as to matters within the opposing party's knowledge. For example, in cases of corporate fraud, plaintiffs will not have personal knowledge of all of the underlying facts. *Id.* "In such cases, the particularity requirement may be satisfied if the allegations are accompanied by a statement of the facts on which the belief is founded." *Id.* (citations omitted). Instances of corporate fraud may also make it difficult to attribute particular fraudulent conduct to each defendant as an individual. To overcome such difficulties in cases of corporate fraud, the allegations should include the misrepresentations themselves with particularity and, where possible, the roles of the individual defendants in the misrepresentations. *See id.* at 1440.

In the present case, the prospectuses are not specifically identified as to content, date or author. The complaint does not specify which plaintiff received which prospectus, or which plaintiff(s) made purchases through the stockbroker defendants, or which securities the investors allegedly purchased. The investors' allegations do not adequately state the facts on which their belief is founded, and thus fail to satisfy even the relaxed standard enunciated in *Wool. See Blake v. Dierdorff,* 856 F.2d 1365, 1369 (9th Cir.1988). Moreover, unlike the situation in *Wool,* the accountant, lawyer and stockbroker defendants in this case are not a narrowly defined group of corporate officers or directors who are alleged to have had day-to-day control over the fraudulent entities or their finances. *See Wool,* 818 F.2d at 1440.

We conclude that the district court did not err when, in June 1984, it denied leave to amend the complaint to add the section 10(b) and rule 10b–5 claims; these claims were not pleaded with sufficient specificity and were subject to dismissal. *See Pan–Is-*

lamic Trade Corp., 632 F.2d at 546. We further conclude that the district court did not err when on July 30, 1987 it again denied leave to file the proposed third amended complaint, which complaint contained the same section 10(b) and rule 10b–5 claims. After three years, the investors had failed to cure the deficiencies of the earlier proposed pleading.

### 3. RICO Claim

The investors' proposed third amended complaint alleges violations of 18 U.S.C. § 1962(c) through a pattern of racketeering activity within the definition of 18 U.S.C. §§ 1961(1)(A) and (D), and § 1961(5). These allegations are directed at all defendants. Liability under 18 U.S.C. § 1962(c) requires the conduct of an enterprise through a pattern of racketeering activity. Sun Savings and Loan Ass'n v. Dierdorff, 825 F.2d 187, 191 (9th Cir.1987) (citing Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985)). "Racketeering activity" is any act indictable under several provisions of Title 18 of the United States Code, see 18 U.S.C. § 1961.

▮▮▮ The district court dismissed the investors' RICO claim in June 1984, solely on the ground that there was no allegation of a racketeering enterprise injury. The district court's reason for dismissal, failure to allege a racketeering enterprise injury, is no longer valid. In Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court expressly considered whether an allegation of a racketeering enterprise injury is necessary to sustain a RICO claim, and concluded "[t]here is no room in the statutory language for an additional, amorphous 'racketeering injury' requirement." 473 U.S. at 495, 105 S.Ct. at 3284. The district court's dismissal of the RICO claim on the "racketeering injury" ground, however, does not dispose of the issue on appeal. We will affirm a district court's correct legal result, even if reached for an invalid reason. Bruce v. United States, 759 F.2d 755, 758 (9th Cir.1985); Alcaraz v. Block, 746 F.2d 593, 602 (9th Cir.1984).

We have applied the particularity requirements of rule 9(b) to RICO claims. Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1392–93 (quoting Schreiber Distrib. v. Serv–Well Furniture Co., 806 F.2d 1393, 1400 (9th Cir.1986)). Rule 9(b) requires that the pleader state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation. Id. 862 F.2d at 1401.

The RICO claim in the investors' proposed third amended complaint does not attribute specific conduct to individual defendants. The claim also does not specify either the time or the place of the alleged wrongful conduct other than to say: "Commencing on or about October, 1982, and through and including March, 1983, within the Central District of California, and elsewhere, the defendants, and each of them, devised, intended to devise and carried out, a scheme to defraud, ...". This is not sufficient. "Allegations of fraud under section 1962(c) "must identify the time, place, and manner of each fraud plus the role of each defendant in each scheme." Schreiber Distrib., 806 F.2d at 1401 (quoting Lewis v. Sporck, 612 F.Supp. 1316, 1325 (N.D. Cal.1985)).

Our discussion of the deficiencies in the general allegations of the investors' section 10(b) and rule 10b–5 claim applies to the investors' RICO claim as well. Nearly all of the complaint's general RICO allegations refer to the conduct of Celani, Binder, and entities CCA and Kayport. These defendants are not parties in this appeal. The few general allegations of conduct which are apportioned to a particular defendant are aimed at the stockbroker defendants. These particular charges, however, fail to specify the time, place, and content of the alleged mail and securities fraud, the predicate acts on which the RICO claim is based. Furthermore, none of the RICO allegations identifies the role of the individual defendants in the alleged fraudulent scheme.

These deficiencies in the RICO allegations were the same in 1987 as they were in 1984, the two times the investors sought to

add RICO claims to their complaint. The complaint which was proffered in 1984 was deficient as to the RICO claims and so was the complaint proffered in 1987.

We conclude that the district court did not err when, in June 1984, it denied leave to file the third amended complaint to set forth the RICO claims; these claims were defective, and would have been subject to dismissal. *See Pan–Islamic Trade Corp.*, 632 F.2d at 546. We also conclude that the district court did not err when on July 30, 1987 it again denied leave to file the third amended complaint containing the RICO claims. Three years had passed, and the defects in the RICO claims had not been cured.

## CONCLUSION

We affirm the district court's dismissal of the section 12(2) claims in the second amended complaint as against the accountant and lawyer defendants, and in dismissing the pendent state claims against the accountant, lawyer and stockbroker defendants. We affirm the district court's denial of leave to file the third amended complaint against the accountant and lawyer defendants. We remand to the district court the question of whether, notwithstanding that the investors' proposed third amended complaint stated a claim under section 12(2) against the stockbroker defendants, leave to file the third amended complaint should be denied anyway because of undue delay, bad faith or dilatory motive in presenting the motion for leave to file the third amended complaint in May 1984.

AFFIRMED in part and REMANDED in part for further proceedings consistent with this opinion.