## In re EMULEX CORPORATION SECURITIES LITIGATION.

No. CIV.01–0219–GLT.

United States District Court,
C.D. California,
Southern Division.

March 6, 2002.

Spencer A. Burkholz, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, David R. Scott, James E. Miller, Scott & Scott, Colchester, CT, Steven E. Cauley, Cauley, Geller, Bowman & Coates, Little Rock, AR, Brian J. Robbins, Robbins, Umeda & Fink, San Diego, CA, for plaintiff.

Wayne W. Smith, Elizabeth Ann Warke, Stacy J. Burrell, Meryl L. Young, Gibson, Dunn & Crutcher, Irvine, CA, for defendants.

### ORDER DENYING DEFENDANTS' MOTION TO DISMISS

TAYLOR, District Judge.

Defendants' Motion to Dismiss the Complaint is DENIED.

## I. BACKGROUND

Emulex Corporation, which designs, develops and supplies adapters, hubs, chips and software products to provide connectivity solutions for fibre optic networks, had a reputation of providing the stock market with a financially-conservative philosophy. In December 2000 and January 2001, shortly after reminding the public of its careful and conservative approach, Emulex announced increased earnings for the quarter and the 2001 fiscal year. From mid-January until early February (the critical period), Emulex assured the market it was on target to meet its higher projections. Emulex's stock price increased significantly when these statements were made.

Plaintiffs assert Emulex knew these statements were false because they were made after several Emulex customers delayed and canceled orders (push-outs). These push-outs weakened Emulex's business. Plaintiffs contend Defendants, who are officers and members of Emulex's Board of Directors, relied on their inside information about the push-outs and sold significant percentages of their Emulex stock during the critical period. Emulex's stock value plummeted after analysts reported the push-outs and suggested the push-outs began by early January.

Plaintiffs bring fraud and insider trading claims against Defendants. Plaintiffs contend these Defendants breached their fiduciary duties to Emulex by participating in insider trading and making false statements about Emulex's business and financial condition. Defendants claim Plaintiffs have not pled their claims with sufficient particularity and bring this Motion to Dismiss Plaintiffs' claims.

## II. DISCUSSION

### A. Motion to Dismiss Standard

The function of a Rule 12(b)(6) motion is to test the legal sufficiency of the claims stated in the complaint. The Court construes the complaint in the light most favorable to the plaintiff and accepts all well-pleaded factual allegations as true. *See Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir. 1996). "However, the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754–55 (9th Cir.1994).

A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988). Thus, the question is whether the facts alleged, if true, would entitle the plaintiff to any form of relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Parks Sch. of Bus., Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995).

### B. Fraud Pleading Standard

The Private Securities Litigation Reform Act (PSLRA) and Federal Rules require plaintiff to plead fraud claims with particularity. The purpose of Rule 9(b) is to ensure "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir.1985); *see also Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 540 (9th Cir.1989) (explaining allegations cannot be conclusory, but must identify the fraud circumstances with sufficient detail for defendant to prepare an answer). "Allegations of specific problems undermining a defendant's optimistic claims suffice to explain how the claims are false." *Cooper v. Pickett,* 137 F.3d 616, 626 (9th Cir.1997) (quoting *Fecht v. Price Co.,* 70 F.3d 1078, 1083 (9th Cir.1995)); *see e.g., Warshaw v. Xoma Corp.,* 74 F.3d 955, 960 (9th Cir. 1996) (finding plaintiff satisfied Rule 9(b) requirements by alleging optimistic facts made

by defendants who knew contradictory, adverse facts at the time).

The Rule 9(b) pleading standard may be slightly relaxed in certain situations. For example, the Ninth Circuit relaxed the pleading rule "with respect to matters within the opposing party's knowledge," because "plaintiffs can not be expected to have personal knowledge of the relevant facts." *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir.1993). This "exception" applies to cases of corporate fraud. *See e.g., Moore,* 885 F.2d at 540 (explaining "plaintiffs will not have personal knowledge of all of the underlying facts," and may meet the Rule 9(b) requirement "if the allegations are accompanied by a statement of the facts on which the belief is founded"). Moreover, in cases of corporate fraud, the Court may presume the officers of the corporation are collectively responsible for the corporation's misrepresentations. However, "this exception does not nullify Rule 9(b); a plaintiff who makes allegations on information and belief must state the factual basis for the belief." *Id.*

### C. *Plaintiffs' Pleadings*

Plaintiffs allege statements concerning anticipated company growth made by individual Defendants and in group-published documents, like press releases, conference calls and presentations, on January eighteenth, twenty-fifth, and thirty-first and February fifth, were knowingly false. *See* Compl. ¶¶ 34–47, 50, 52–55. Plaintiffs claim Defendants knew their customers' orders changed due to push-outs and the company would not meet its announced goals without those sales. Plaintiffs refer to analyst reports indicating Defendants were aware of the push-outs and the likelihood Emulex would not meet its goals to support their contention Defendants' January and February statements were misrepresentations.

Plaintiffs sufficiently allege the push-outs occurred during the critical period, the analyst reports were based on statements by Emulex and Defendants, and Defendants' trading increased significantly over the last few months, constituting significant trading of their stock.[1] Plaintiffs contend the push-outs occurred immediately before or about the same time as Defendants' allegedly false statements. Plaintiffs identify some of the Company's main customers who decreased their orders at those times. Plaintiffs rely on analyst reports to support these contentions, explaining the analysts based their reports on information from Emulex. Although Plaintiffs do not indicate a specific push-out date, Defendants can defend these allegations because Plaintiffs allege the push-outs occurred within the critical time-frame and also identify particular Emulex customers.

Plaintiffs' allegation Defendants knew about the push-outs when the optimistic statements were made is based on a reasonable belief. Plaintiffs contend Defendants' review practices and the time-frame within which the push-outs occurred support their contention Defendants had actual knowledge of the push-outs when the alleged false statements were made. Plaintiffs support this belief by stressing Defendants' practice to review customer requests frequently (real time analysis)[2] and Defendants alleged knowledge about the push-outs from those reviews. Plaintiffs also claim the analyst reports suggest Defendants were aware of actual or potential push-outs.

Plaintiffs assert each Defendant knew about the push-outs, participated in the real time process, and was responsible for the information provided for the analyst reports. Defendants' contentions, such as whether each Defendant was aware of or involved in these activities, raise questions of fact not before the Court at this time. Plaintiffs

---

1. Plaintiffs allege Defendants traded somewhere between 28% and 100% of their Emulex stock during the critical period to bolster their claims. Whether Plaintiffs' allegation these stock trades are distinct from Defendants' stock trading patterns is accurate is a question of fact not before the Court at this time.

2. Defendants' contention the real time analysis process only applied to certain clients raises issues of fact not before the Court at this time. Plaintiffs allege the real time analysis applied to Defendants' main customers whose push-outs during the critical period severely impacted Emulex's profits.

sufficiently allege their claims. Either party may bring a summary judgment motion once the facts have been sufficiently developed. Defendants' Motion to Dismiss is DENIED.