## CIRCUIT COURT OF THE CITY OF NORFOLK

Waterside Capital Corp.

v.

National Assisted Living, L.P., et al.

September 19, 2002

Case No. (Law) L01-2488

BY JUDGE EVERETT A. MARTIN, JR.

At the hearing last week, I sustained in part the demurrer of Williams Mullen to the plaintiff's cause of action for a violation of the Virginia Securities Act because the plaintiff had not alleged sufficient facts to show that Williams Mullen exercised "control" over National Assisted Living, L.P. (NALLP) within the meaning of Code of Virginia §§ 13.1-501 and 13.1-522(C). There remains for decision the sufficiency of the pleading as to Williams Mullen's being a "seller" under §§ 13.1-502 and 13.1-522(A). Counsel agree that the meaning of "seller" is the same under the Securities Act of 1933 and the Virginia Securities Act. *Shavin v. Commonwealth*, 17 Va. App. 256, 437 S.E.2d 411 (1993).

The leading case defining a "seller" under the Securities Act of 1933, *Pinter v. Dahl*, 486 U.S. 622 (1988), gives some guidance concerning the liability of attorneys. In rejecting the "substantial factor" test several circuit courts had adopted, the Court stated:

the test also would extend § 12(1) liability to participants only remotely related to the relevant aspects of the sales transactions. Indeed, it might expose securities professionals such as accountants and lawyers, whose involvement is only the performance of their professional services, to § 12(1) strict liability for rescission.

486 U.S. at 651. Thus, lawyers whose involvement in the transaction entails activities beyond the performance of professional services are, it would seem, potentially liable. However, the Court went on to limit liability, holding:

> The language and purposes of § 12(1) suggest that liability extends only to the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner.

486 U.S. at 647. Near the end of the opinion, the Court further explained the necessary financial interest:

> Typically, a person who solicits the purchase will have sought or received a personal financial benefit from the sale, such as where he "anticipates a share of the profits" . . . or receives a brokerage commission. But a person who solicits the buyer's purchase in order to serve the financial interests of the owner may properly be liable under § 12(1) without showing that he expects to participate in the benefits the owner enjoys.

486 U.S. at 654-55.

In *Wilson v. Saltine Exploration and Drilling Corp.*, 872 F.2d 1124 (2d Cir. 1989), the law firm's only contact with the plaintiff was mailing the private placement memorandum to him. The court held this did not constitute solicitation. It also stated: "Of course, it does not follow that lawyers are exempt from the concept of a 'seller' under Section 12 where they earn a commission from an actual seller for persuading their clients to make a particular investment." 872 F.2d at 1127.

In *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531 (9th Cir. 1989), the court upheld the district court's granting of a Rule 12(b)(6) motion in favor of the attorneys. The plaintiffs alleged the attorneys drafted false and misleading prospectuses, participated in meetings to draft promotional materials, drafted tax opinions, gave advice to other defendants in preparing promotional materials, and allowed their names to be used on these materials. The court found these activities did not constitute solicitation and, in construing Pinter, stated: "As to accountants and lawyers, [Pinter] suggests that the activities of these professionals must be directed toward producing a sale as opposed to merely providing professional services before section 12(1) liability may be imposed." 885 F.2d at 535.

The issue turns on the various roles of Lawrence Siegel. The amended motion for judgment alleges that he is an attorney for Williams Mullen, that he represented both the issuer and the purchaser of the securities, that he is a limited partner in NALLP, the issuer, and that he is an officer and director of NAL, the general partner of NALLP.

The plaintiff further alleges in paragraph 13 that "Siegel contacted Waterside regarding a potential investment by Waterside in NALLP." Paragraph 14 alleges that Siegel sent an "executive summary and background information" to Waterside "in furtherance of the effort to persuade Waterside to invest in NALLP" and that he drafted portions of the executive summary. Paragraph 15 alleges that NALLP "through statements made by Siegel" and others made certain representations to Waterside about NALLP's financial condition and the status of certain construction projects. Paragraph 17 alleges meetings were held among NALLP representatives, Waterside, and Siegel in which Siegel made additional representations about NALLP's activities and finances. These allegations do not claim Siegel was acting on behalf of Williams Mullen.

Paragraph 19 alleges that Siegel submitted by facsimile on Williams Mullen's letterhead certain information regarding NALLP's finances. Paragraph 25 alleges Siegel's preparation of a memorandum on Williams Mullen's letterhead to a representative of Waterside suggesting changes to the "investment structure." Paragraphs 31 through 34 allege Williams Mullen's preparation of the transaction documents. The allegations recited in this paragraph describe nothing more than the performance of professional services. *Moore, supra.*

Williams Mullen is next mentioned with respect to the securities claim in paragraphs 66 to 71. Paragraph 66 realleges what was pleaded in the preceding paragraphs. With one exception, paragraphs 67 through 71 contain only legal conclusions. Even paragraph 68, which relates to the solicitation, does not state whom Siegel solicited, what he said or did in the nature of a solicitation, or what facts support the plaintiff's claim that his solicitation was on behalf of Williams Mullen. Rule 1:4(d) requires a pleading to state facts, not legal conclusions.

The only allegation of fact in these paragraphs is this statement in paragraph 68: "Indeed, Williams Mullen billed NALLP for Siegel's solicitation efforts." This allegation does not support the claim that Williams Mullen was motivated at least in part to serve its own financial interests. There is no claim Williams Mullen was to receive a share of the sales proceeds, a commission or bonus if the securities were issued, or a fee contingent on the completion of the transaction.

The plaintiff has also alleged that Williams Mullen was motivated "to bestow a financial benefit upon NALLP." In its rebuttal memorandum filed before argument on the first demurrer, Williams Mullen argued, "If Williams Mullen could be deemed a seller simply because it wanted to see a client succeed, then all law firms providing legal services for a seller of securities would be liable and the exception would swallow the rule." This is not an accurate statement of the law.

A law firm representing a securities issuer has no liability if it provides only legal services. If it solicits the sale for its client, it may. The Supreme Court in Pinter did not exempt lawyers from liability if they are motivated to serve the financial interests of the issuer of the securities. A law firm representing a securities issuer is vulnerable to allegations of solicitation when it allows its partners to mix their personal interests with their professional responsibilities to the client. When such a law firm goes further and represents both sides of a securities transaction, it makes itself a most tempting target for a former client whose investment has become worthless.

The demurrer is sustained in toto to count 3 of the Amended Motion for Judgment without leave to amend because leave to amend this count has previously been granted, the trial is to begin in less than four weeks, discovery is to be cut-off in less than two weeks, and the issues in this case are quite complex.

The motion to sever is denied at this time. I suggest the trial be bifurcated. The first part of the trial would involve all counts save that of legal malpractice. After the jury returns a verdict on those counts and, if that verdict does not bar the malpractice claim or render it moot, the parties would introduce evidence relevant only to the legal malpractice count. The jury would then be instructed and deliberate on that count. This procedure would reduce the prejudice Williams Mullen fears, the expense the plaintiff would incur in having two trials, the inconvenience to the witnesses, many of whom would testify twice if there were separate trials, and promote judicial efficiency. I believe the authority for such a procedure is inherent. See *Dixon Livery Co. v. Bond*, 117 Va. 656, 86 S.E. 106 (1915).