

# IN THE SUPREME COURT OF GUAM

**GOODWIND DEVELOPMENT CORPORATION,**
Plaintiff-Counterclaim Defendant-Appellant/Cross-Appellee,

**v.**

**WEST BAY CORPORATION and 21st CENTURY CORPORATION,**
Defendants-Counterclaimants-Appellees/Cross-Appellants.

Supreme Court Case No. CVA23-015
Superior Court Case No. CV0028-23

## OPINION

## Cite as: 2025 Guam 14

Appeal from the Superior Court of Guam
Argued and submitted on October 17, 2024
Hagåtña, Guam

Appearing for Plaintiff-Appellant/
Cross-Appellee:
Anita P. Arriola, *Esq.*
Arriola Law Firm
259 Martyr St., Ste. 201
Hagåtña, GU 96910

Appearing for Defendants-Appellees/
Cross-Appellants:
Louie J. Yanza, *Esq.*
Law Office of Louie J. Yanza, P.C.
MVP Bldg.
862 S. Marine Corps Dr., Ste. 203
Tamuning, GU 96913


**E-Received**
12/30/2025 9:26:47 AM

BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**TORRES, C.J.:**

[1]     Plaintiff-Appellant/Cross-Appellee Goodwind Development Corporation ("Goodwind" or "GDC") appeals the Superior Court's decision and order dismissing its complaint against Defendants-Appellees/Cross-Appellants West Bay Corporation ("West Bay") and 21st Century Corporation ("Century" or "21st Century"; together with West Bay, the "Defendants"; and each a "Defendant"). On appeal, Goodwind argues the trial court erred by: (1) relying on extrinsic matters when granting the Defendants' motion to dismiss; (2) failing to convert the Defendants' motion to dismiss into a motion for summary judgment; and (3) concluding that Goodwind's claims were time-barred based on the unenforceability of statute of limitations waivers contained in two promissory notes.

[2]     The Defendants cross-appeal the Superior Court's judgment denying their motion for reconsideration of an order dismissing their counterclaims. The Defendants argue that the trial court erred by: (1) dismissing their fraud and fraud-related counterclaims for lack of particularity; (2) applying the parol evidence rule to bar evidence of negligent misrepresentation, breach of contract, and breach of the covenant of good faith and fair dealing; (3) dismissing their unjust enrichment counterclaim as time-barred; and (4) denying their request for leave to amend their counterclaims on the ground of futility.

[3]     We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Background of the Parties

[4]     Goodwind, West Bay, and Century are Guam corporations, duly registered to do business in Guam, with their principal places of business on the island. Goodwind is owned by Lucio Chua

Tan, Sr. ("Tan"), a Philippine citizen. His eldest child, Rowena Tan Chua ("Rowena"), served as Goodwind's Treasurer from the early 1990s until 2021. Rowena's husband, Joseph Chua ("Joseph"), held various roles at Goodwind, serving as Managing Director from about 1988 until 2021, in addition to serving as President from 2013 until 2021. Rowena and Joseph are also representatives of West Bay and Century.

## B. The Garage Investment

[5]　　Joseph, as Goodwind's Managing Director, informed the company of a parking garage in San Francisco ("Garage") available for purchase at $6,000,000, intending for Goodwind to acquire and later sell it for profit. Tan allegedly approved the acquisition. However, Goodwind's due diligence revealed that its ownership of the Garage would have "substantial tax implications" if the property were later sold. Record on Appeal ("RA"), tab 8 ¶ 27 (Defs.' Answer & Countercl., Mar. 7, 2023). Specifically, foreign ownership in Goodwind would trigger a "profits tax" in the U.S., potentially raising the overall tax rate to over 60%. *Id.* ¶ 28.

[6]　　The Defendants allege that Goodwind devised a strategy to acquire the Garage while mitigating the tax burden, based on advice from its tax advisors, Deloitte Touche LLP ("Deloitte") and Ernst & Young LLP ("E&Y"). Goodwind's Chief Financial Officer and Vice President of Operations, Willy Onglao, emailed Goodwind's President and Director, James Chiang, and Joseph, summarizing E&Y's and Deloitte's recommendations. According to one email, E&Y advised that "Rowena will represent GDC Guam in [the] California LLC" and that "GDC will pay for Rowena's taxes in California and Guam in so far as [the] California LLC is concerned." *Id.* ¶ 30; *id.*, Ex. C at 1 (Email, Mar. 3, 2011). The email also outlined Deloitte's alternative recommendation to form a California corporation to represent Goodwind in the LLC.

[7]　　The Defendants assert that Goodwind's final strategy involved (1) buying the Garage through a California limited liability company ("California LLC") owned by a U.S. citizen and (2)

having either a California or Guam corporation invest in the California LLC. The Defendants further claim E&Y advised that Rowena should act as Goodwind's nominee owner in the California LLC due to her U.S. citizenship.

[8]      The Defendants contend that Rowena agreed to serve as the nominee shareholder "in the place of" Goodwind based on (1) representations from Onglao and Chiang, (2) advice from Deloitte and E&Y, and (3) Tan's "tacit approval." RA, tab 8 ¶ 34 (Defs.' Answer & Countercl.). Acting on further guidance from Deloitte and E&Y, Rowena incorporated West Bay. She is its sole shareholder. That same day, Rowena and Joseph incorporated Century, of which they are the sole shareholders.

[9]      A week later, a California limited liability company, SF Oakland Bay LLC ("SFOB"), was formed to acquire the Garage. West Bay acquired a 75% membership interest in SFOB, while Century acquired a 12% membership interest.

## C. The Promissory Notes

[10]      The Defendants allege that, to reinforce that West Bay was owned by Rowena rather than Goodwind, Onglao advised Rowena to have West Bay execute a $750,000 promissory note ("West Bay Note") in favor of Goodwind around May 2011.

[11]      To finance its ownership interest in SFOB, and allegedly with the consent of Goodwind's senior officers, Century borrowed $120,000 from Goodwind and executed a promissory note ("Century Note") in favor of Goodwind around May 2011.

[12]      Both the West Bay and Century Notes (together, "Promissory Notes" or "Notes") do not accrue interest and are payable to Goodwind within 30 days of demand. The Notes also include identical provisions waiving certain defenses, including the statute of limitations: "The Borrower . . . to the extent allowable by law waives the benefit of any statute of limitations with respect to

any action to enforce, or otherwise related to, this Note." RA, tab 1 (Compl., Jan. 20, 2023), Ex. A at 2 (West Bay Note, 2011); *id.*, Ex. C at 2 (Century Note, 2011).

## D.  The Garage Deposit

[13]　The Defendants allege that Goodwind used its own funds to pay the deposit to the seller of the Garage, which represented West Bay's 75% capital contribution and Century's 12% capital contribution to SFOB. However, Goodwind asserts that Joseph, as Goodwind's Managing Director, "used the $750,000 borrowed by West Bay and the $120,000 borrowed by 21st Century as an earnest deposit to the seller." RA, tab 13 at 4 (Pl.'s Mem. P. & A. Supp. Mot. Dismiss, Apr. 17, 2023) (citing RA, tab 8 ¶¶ 41, 43 (Defs.' Answer & Countercl.)). Goodwind further asserts that, to finance the entire purchase price, Goodwind—through Joseph as its Managing Director—and SFOB, "executed loan agreements with the Bank of Hawaii for $17,500,000" ("SFOB loan"). *Id.* (citing RA, tab 8 ¶ 44 (Defs.' Answer & Countercl.)).

## E.  The Lawsuit

[14]　Over eleven years after issuing the Notes, Goodwind issued demand letters to West Bay and Century, requesting full payment of their respective Notes within 30 days of receipt. The letters warned that if payment was not made within 30 days, Goodwind would initiate legal proceedings to collect the debts. After the 30-day period passed, Goodwind contended that West Bay and Century did not pay the amounts due. Goodwind filed a complaint for breach of promissory note against each Defendant.

[15]　The Defendants filed an answer, asserting 28 affirmative defenses and nine counterclaims, including (1) fraud in the inducement, (2) intentional misrepresentation, (3) negligent misrepresentation, (4) constructive fraud, (5) breach of the implied covenant of good faith and fair

dealing, (6) rescission based on fraudulent inducement, (7) breach of contract, and (8) unjust enrichment.[1]

[16] The Defendants allege that Goodwind assured West Bay and Century that (1) the West Bay Note was never intended to be repaid; (2) Rowena was the "nominee holder" in West Bay for Goodwind; (3) Goodwind would pay "its share of any operating expenses, taxes, and loans" related to the Garage; and (4) Goodwind would reimburse West Bay and Century for the SFOB loan and other expenses. RA, tab 8 ¶¶ 35-37, 61 (Defs.' Answer & Countercl.). Goodwind argues that these claims are barred by the parol evidence rule and that Defendants' fraud claims are "deficient and without merit." Appellant's Reply Br. at 2-3 (Sep. 16, 2024); *accord* RA, tab 13 at 4-5 (Pl.'s Mem. P. & A. Supp. Mot. Dismiss).

[17] The Defendants also allege that Century paid off the Century Note by November 30, 2011, "through some form of a payroll deduction of Joseph's salary," and Century is "no longer indebted" to Goodwind. RA, tab 8 ¶¶ 42, 45 (Defs.' Answer & Countercl.). However, Goodwind asserts that it has not received payments from Century, and that the Note remains unpaid in the amount of $120,000.

[18] Goodwind filed a Guam Rule of Civil Procedure ("GRCP" or "Rule") 12(b)(6) motion to dismiss the Defendants' counterclaims, and the Defendants filed a motion to dismiss Goodwind's complaint. The trial court granted both motions. The Defendants moved for reconsideration of the trial court's dismissal of their counterclaims. The trial court denied this motion. Having dismissed the Plaintiff's complaint and the Defendants' counterclaims, the court issued a revised judgment.

---

[1] The ninth counterclaim is for abuse of process. The Defendants have not raised this counterclaim on appeal.

[19]    Goodwind filed a timely notice of appeal.   The Defendants filed a timely notice of cross-appeal.

## II.  JURISDICTION

[20]    This court has jurisdiction over appeals from a final judgment of the Superior Court of Guam.  48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 119-59 (2025)); 7 GCA §§ 3107, 3108(a) (2005).  Typically, an order granting a motion to dismiss for failure to state a claim is a final judgment.  *Cruz v. Cruz*, 2023 Guam 20 ¶ 15 (quoting *Portis Int'l, LLC v. Marquardt*, 2018 Guam 22 ¶ 6).

## III.  STANDARD OF REVIEW

[21]    This appeal involves questions of law, which are reviewed *de novo.  See id.* ¶ 10 (reviewing dismissal for failure to state claim); *id.* ¶ 11 (citing *Gayle v. Hemlani*, 2000 Guam 25 ¶ 22) (reviewing claim barred by statute of limitations); *M Elec. Corp. v. Phil-Gets (Guam) Int'l Trading Corp.*, 2012 Guam 23 ¶ 21 (reviewing application of parol evidence rule); *Duenas v. George & Matilda Kallingal, P.C.*, 2012 Guam 4 ¶ 37 (interpreting contract).

[22]    When evaluating a motion to dismiss under GRCP 12(b)(6), a court's review is limited to the complaint, attached exhibits, incorporated documents, and materials heavily relied upon in the complaint.  *Newby v. Gov't of Guam*, 2010 Guam 4 ¶ 14.  The court "must accept all the well-pleaded facts as true, 'construe the pleading in the light most favorable to the non-moving party, and resolve all doubts in the non-moving party's favor.'"  *Cruz*, 2023 Guam 20 ¶ 10 (quoting *Guam Police Dep't v. Guam Civ. Serv. Comm'n* (*Charfauros*), 2020 Guam 12 ¶ 8).  "Dismissal for failure to state a claim is appropriate only 'if it appears beyond doubt that the [non-moving party] can prove no set of facts in support of his claim which would entitle him to relief.'"  *Id.* (alteration in original) (quoting *Taitano v. Calvo Fin. Corp.* (*Taitano II*), 2009 Guam 9 ¶ 6).

**[23]**    Fraud claims "are subject to a heightened pleading standard." *Ukau v. Wang*, 2016 Guam 26 ¶ 35.  While fraud need not be proven at the pleading stage, GRCP 9(b) requires that the claimant plead the circumstances constituting the alleged fraud with sufficient particularity to notify the opposing party of the claimed misconduct.  *Id.* ¶ 47 (citing *Taitano v. Calvo Fin. Corp.* (*Taitano I*), 2008 Guam 12 ¶ 16).

**[24]**    If a complaint fails to state a claim or lacks particularity in alleging fraud, "[d]enial of leave to amend is reviewed for abuse of discretion." *Taitano I*, 2008 Guam 12 ¶ 9 (alteration in original) (quoting *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001)).  Although leave to amend "shall be freely given when justice so requires," Guam R. Civ. P. 15(a), amendment may be denied as futile if the complaint would still be subject to dismissal, *Lujan v. Calvo Fisher & Jacob LLP*, 2018 Guam 27 ¶ 13.  A trial court abuses its discretion if it denies leave to amend "based on clearly erroneous factual findings or an incorrect legal standard." *M Elec. Corp. v. Phil-Gets (Guam) Int'l Trading Corp.*, 2016 Guam 35 ¶ 41 (quoting *Agana Beach Condo. Homeowners' Ass'n v. Untalan*, 2015 Guam 35 ¶ 12).  A finding is clearly erroneous if "it is not supported by substantial evidence," leaving the reviewing court with a "definite and firm conviction that a mistake has been made." *Id.* (quoting *Ptack v. Ptack*, 2015 Guam 5 ¶ 24).

## IV.  ANALYSIS

### A.  We Reject Goodwind's Arguments Raised on Appeal

**[25]**    Goodwind argues that the trial court erred by: (1) relying on matters extrinsic to the complaint when granting the Defendants' motion to dismiss; (2) not converting the Defendants' motion to dismiss into a motion for summary judgment under GRCP 12(c); and (3) finding that Goodwind's claims were time-barred due to the invalidity of the Notes' statute of limitations waivers under Guam law.  We reject each of these contentions as unfounded.

**1. The trial court did not rely on extraneous matters in granting the Defendants' motion to dismiss and therefore did not err in declining to convert the motion to one for summary judgment**

[26]     Goodwind argues that (1) the trial court considered matters extraneous to its complaint when granting the Defendants' Rule 12(b)(6) motion to dismiss and (2) the trial court was therefore required under Rule 12(c) to convert the motion to dismiss into a Rule 56 motion for summary judgment. Appellant's Br. at 7, 10-11 (July 17, 2024). We disagree.

[27]     Generally, in ruling on a Rule 12(b)(6) motion, courts may consider only the complaint, attached exhibits, "statements or documents incorporated in the complaint by reference," and materials heavily relied upon in the complaint. *See Newby*, 2010 Guam 4 ¶ 14 (citing *Mercado Arocho v. United States*, 455 F. Supp. 2d 15, 19 (D.P.R. 2006)). Because GRCP 12 is modeled on its federal counterpart, *see* Guam R. Civ. P. 12, SOURCE, we look to federal case law as persuasive. Under GRCP 12(c), if "matters outside the pleadings are presented to and not excluded by the court" in ruling on a Rule 12(b)(6) motion, the motion must be treated as one for summary judgment, and all parties must be given a reasonable opportunity to present relevant material under Rule 56. Guam R. Civ. P. 12(c); *Core Tech Int'l Corp. v. Hanil Eng'g & Constr. Co.*, 2010 Guam 13 ¶ 29. However, a court's "failure to treat [a motion to dismiss] as one for summary judgment does not require reversal if the error was harmless." *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020). A court's reference to extraneous matters is harmless if (1) the court does not factor such extraneous matters into its rationale for dismissal and (2) the dismissal can instead be explained "without reference to any extraneous matters." *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 484 (6th Cir. 2020) (quoting 5C *Wright & Miller's Federal Practice & Procedure* § 1364 (3d ed. Supp. 2019)); *accord Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1360-61 (Fed. Cir. 2023) (treating error as harmless where trial court failed to expressly reject extraneous materials, because dismissal justified without them).

[28]    In their motion to dismiss, the Defendants included allegations from their counterclaims, which were not part of Goodwind's complaint. *See* RA, tab 23 at 2 (Defs.' Mot. Dismiss, July 27, 2023). Goodwind objected and asked the trial court to disregard those allegations. RA, tab 25 at 4-5 (Pl.'s Opp'n Mot. Dismiss, Aug. 24, 2023). Acknowledging this objection, the court explicitly stated that it would not consider extraneous matters. RA, tab 33 at 3 (Dec. & Order, Oct. 24, 2023). Although the trial court specifically indicated that it would "disregard[] facts not included in the original complaint," *id.*, it also included extraneous facts in its list of "relevant facts regarding [Defendants'] Motion to Dismiss" along with citations to the Defendants' counterclaims, *see id.* at 2-3.[2]

[29]    Despite these references, the trial court (1) stated it would disregard facts not included in Goodwind's complaint and (2) did not rely on any extraneous facts in its legal analysis. *Id.* at 3-6. Instead, it based its ruling on facts alleged within the complaint, including the execution of two promissory notes in May 2011, each lacking a maturity date and waiving the statute of limitations "to the extent allowable by law." *Id.* at 5-6 (citing RA, tab 1 at 2 (Compl.); *id.*, Ex. A (West Bay Note); *id.*, Ex. C (Century Note)). In its discussion and application of the law, the trial court refers to the Defendants' counterclaims in only two instances. The first is when noting that the "statute of limitations for the Promissory Notes started in May of 2011, and this action was not brought until eleven years and eight months later." RA, tab 33 at 5-6 (Dec. & Order) (citing RA, tab 8

---

    [2] The list of relevant facts included in the October 24, 2023 Decision and Order is identical to the list of relevant facts that the trial court included in its October 11, 2023 Decision and Order granting Goodwind's motion to dismiss the Defendants' counterclaims. *Compare* RA, tab 33 at 2-3 (Dec. & Order, Oct. 24, 2023) (quoting RA, tab 8 (Defs.' Answer & Countercl., Mar. 7, 2023)), *with* RA, tab 29 at 2-3 (Dec. & Order, Oct. 11, 2023) (quoting RA, tab 8 (Defs.' Answer & Countercl.)).

    The Defendants contend that the trial court "simply cut and pasted the 'Factual and Procedural Background' from its October 11, 2023 Decision and Order, which included facts alleged in the Defendants' Counterclaim that were relevant to its earlier decision granting Goodwind's motion to dismiss that Counterclaim but not to its decision on the Defendants' motion to dismiss." Appellees' Br. at 25-26 (Aug. 16, 2024) (comparing RA, tab 33 at 2-3 (Dec. & Order, Oct. 24, 2023), with RA, tab 29 at 2-3 (Dec. & Order, Oct. 11, 2023)).

(Defs.' Answer & Countercl.)). The second is when distinguishing from a case cited by Goodwind: "The facts before this Court are very different, because the Plaintiff before us waited almost twelve years before making any demands on the Promissory Notes or bringing any legal action." *Id.* at 6 (citing RA, tab 8 at 19 (Defs.' Answer & Countercl.)). The matters referenced in these two instances are not extraneous because the fact that this action was brought eleven years and eight months after the Notes' issuance can also be determined by looking only at Goodwind's complaint. *See* RA, tab 1 at 1-2 (Compl.); *id.*, Ex. A (West Bay Note); *id.*, Ex. C. (Century Note).

[30] Concluding that the statute of limitations began running upon execution of the Notes in May 2011, the trial court applied the four-year limitations period under 7 GCA § 11303(a) and determined Goodwind's claims were time-barred. RA, tab 33 at 5-6 (Dec. & Order). Its reasoning for granting the motion to dismiss is grounded in facts that may be gleaned from the four corners of Goodwind's complaint. Because (1) the trial court did not factor extraneous matters into its rationale for dismissal and (2) the dismissal can instead be justified without reference to any extraneous matters, any alleged error in referring to extraneous facts is harmless. Accordingly, it was appropriate for the trial court to treat the motion as one for dismissal under GRCP 12. The court was not required to convert the motion to dismiss into a motion for summary judgment.

### 2. The trial court did not err in finding the Notes' statute of limitations waivers were unenforceable under Guam law

[31] Goodwind's next argument is that the trial court erred in dismissing its complaint on the grounds that its claims were barred by the statute of limitations. Appellant's Br. at 12-13. Goodwind contends that the Notes included waivers of the statute of limitations that are valid under Guam law and its claims should not be time-barred. *Id.* at 13-16.

//

//

### a. Statutory framework for the statute of limitations on promissory notes

[32] Under Guam law, the statute of limitations for an action upon a promissory note is four years.[3] *See* 7 GCA § 11303(a) (2005) (establishing four-year statute of limitations for "[a]n action upon any contract, obligation or liability founded upon an instrument in writing"). For a demand promissory note without a maturity date, the limitations period begins to run (1) "upon its date," or (2) "if no date is stated, on the date of issue." *See* 13 GCA § 3122(1)(b) (2005). The four-year statute of limitations period in 7 GCA § 11303(a) falls under the purview of 7 GCA § 11101: "Civil actions, *without exception*, can only be commenced within the periods prescribed in this Chapter, after the cause of action shall have accrued, *unless where, in special cases, a different limitation is prescribed by law*." 7 GCA § 11101 (2005) (emphases added).

[33] Goodwind's claims arise from two promissory notes, the West Bay Note and the Century Note, which are instruments in writing. Since both Notes are demand instruments without maturity dates and were issued around May 2011, the four-year statute of limitations period began running at that time and expired around May 2015. Both Notes have identical waivers of the statute of limitations, stating: "The Borrower . . . to the extent allowable by law waives the benefit of any statute of limitations with respect to any action to enforce, or otherwise related to, this Note." RA, tab 1, Ex. A at 2 (West Bay Note); *id.*, Ex. C at 2 (Century Note). Thus, central to this case is whether these waivers allow Goodwind to bring its actions upon the Notes over seven years after the expiration of the statute of limitations period.

### b. Interpretation of "to the extent allowable by law"

[34] At issue are the meaning and impact of the phrase "to the extent allowable by law" contained within the waivers. "Guam's case law is clear that the 'plain meaning' or traditional

---

[3] California enacted a law that explicitly allows for the extension of the statute of limitations by an additional four years when the waiver is in writing and signed by the person obligated. *See* Cal. Civ. Proc. Code § 360.5. Guam has not enacted a similar law.

approach is what we are bound to follow in matters of contract interpretation." *Wasson v. Berg*, 2007 Guam 16 ¶ 17. The plain meaning of "to the extent allowable by law" is that the waivers were limited by Guam's controlling law. As the trial court noted, "It is not clear what this limitation, 'to the extent allowable by the law' would mean, if not that the parties could only waive the statute of limitations to the maximum extent allowed by Guam law." RA, tab 33 at 5 (Dec. & Order).

[35]     Under Guam law, civil actions may be commenced after the statute of limitations only "where, in special cases, a different limitation is prescribed by law."[4] 7 GCA § 11101. Guam has no statute expressly permitting the waiver or extension of the statute of limitations for instruments in writing. Therefore, this is not a special case where a different limitation is prescribed by law, and the four-year limitations period applies.

### c. The *Mailloux* case and its limitations

[36]     To support its argument that the statute of limitations can be waived, Goodwind relies on an opinion issued by the Appellate Division of the District Court of Guam in *Guam Economic Development Authority v. Mailloux*, Nos. CV 80–0200A, CV 80–0219, 1986 WL 68510 (D. Guam App. Div. 1986). *See* Appellant's Br. at 13-16; Appellant's Reply Br. at 17-20. In *Mailloux*, the defendants signed a guaranty contract that included a waiver of the four-year statute of limitations established by Guam's 1970 Code of Civil Procedure ("GCCP") section 337. 1986 WL 68510, at *1. When the borrower defaulted, the plaintiff sued the defendants as guarantors. *Id.* The

---

[4] Examples of such "special cases" include: (1) 5 GCA § 7108, which imposes a five-year limitation for claims under 5 GCA Chapter 7 but eliminates the limitations period entirely for enforcement of judgments obtained under that chapter; (2) 7 GCA § 52109, which limits actions to recognize foreign-country judgments to the earlier of fifteen years from effectiveness or the period of enforceability in the originating jurisdiction; and (3) 7 GCA § 50551, which tolls all limitations periods for claims involving a debtor's estate while insolvency proceedings are pending.

Another example is 21 GCA § 47309, which sets a distinct limitations period for challenges to a public offering statement or time-share purchase contract. That statute imposes a four-year period from the contract date and a rolling four-year period for breaches of ongoing service obligations. Additionally, it expressly permits parties to agree to a shorter period, provided it is not reduced below two years. 21 GCA § 47309 (2005).

defendants argued that the waiver was an "adhesive provision to which they had not agreed" and of which they had not been aware when signing the contract. *Id.* The trial court ruled against them on the issue, and the Appellate Division affirmed, finding that defendants were bound by the waiver, despite their subjective awareness of it when signing the contract. *Id.*, at \*1-3.

[37]    While Appellate Division decisions are binding on the trial courts of Guam absent a ruling from this court,[5] they are not controlling precedent for this court. *People v. Quenga*, 1997 Guam 6 ¶ 13 n.4; *People v. Palomo*, 1998 Guam 12 ¶ 6. However, this court has stated that "it will not deviate from precedent of the Appellate Division of the District Court of Guam if it was well established in law and well reasoned, or 'unless reason supports such deviation.'" *Limtiaco v. Guam Fire Dep't*, 2007 Guam 10 ¶ 46 n.9 (citations omitted). In *Limtiaco v. Guam Fire Department*, this court found that there was sufficient reason to support deviation from the Appellate Division's decision when the Appellate Division did not root its reasoning in known authority. *See* 2007 Guam 10 ¶ 46 & n.9.

[38]    *Mailloux* lacks a strong legal foundation. It relied on broad references to "fundamental contract and guaranty law" to hold that "the evidence could reasonably support only the conclusion that [defendant] was bound by the limitations waiver." *Mailloux*, 1986 WL 68510, at \*3. The Appellate Division also cited the Eighth Circuit and the Kansas Court of Appeals to assert that "[i]n the absence of fraud, misrepresentation, or mutual mistake, one who executes a contract cannot avoid it because he failed to read it or because the contract's terms were supposedly

---

[5] While the trial court differentiated this case from *Guam Economic Development Authority v. Mailloux*, 1986 WL 68510 (D. Guam App. Div. 1986), on both the issue and facts, it erred to the extent it rejected *Mailloux* as precedent on the grounds that it is "a case from almost forty years ago that has never been cited." *See* RA, tab 33 at 6 (Dec. & Order, Oct. 24, 2023). Because *Mailloux* was an Appellate Division case, its decision was binding on the trial court with respect to any law upon which this court has yet to rule, regardless of its age or lack of citing references. However, we find this error harmless because we affirm the trial court's judgment on other grounds supported by the record. *See People v. San Nicolas*, 2001 Guam 4 ¶ 29.

different." *Id.*, at \*2 (citing *N&D Fashions Inc. v. DHJ Indus., Inc.*, 548 F.2d 722, 727 (8th Cir. 1976); *Squires v. Woodbury*, 621 P.2d 443, 446 (Kan. Ct. App. 1980)).

[39]     The *Mailloux* court did not consider GCCP § 312, the source of 7 GCA § 11101 and the governing statute at the time.[6]     Even in its discussion of persuasive authority from other jurisdictions, the *Mailloux* court included no laws that directly addressed the validity or enforceability of a waiver of the statute of limitations.  Given its omission of relevant Guam law and lack of on-point legal authority, there is sufficient reason to deviate from *Mailloux*.

[40]     Public policy further supports deviation from *Mailloux*.  While "[a]nyone may waive the advantage of a law intended solely for his benefit[,] . . . a law established for a public reason cannot be contravened by a private agreement."  20 GCA § 15105 (2005).  This court has the power to "refuse[] to enforce contracts that are entered into in violation of public policy."  *See Sorensen Television Sys., Inc. v. Superior Court (Lina'la Sin Casino)*, 2006 Guam 21 ¶ 8.  Statutes of limitations serve a strong public interest by preventing stale claims and ensuring fairness.  *See Custodio v. Boonprakong*, 1999 Guam 5 ¶ 24; *Guam Hous. & Urban Renewal Auth. v. Dongbu Ins. Co.*, 2001 Guam 24 ¶ 13.  The majority rule is that an unlimited waiver of the statute of limitations violates public policy.  *See, e.g.*, *Umpqua Bank v. Gunzel*, 483 P.3d 796, 807-10 (Wash. Ct. App. 2021) (collecting cases from fifteen states).

[41]     While Goodwind concedes that "there is a strong public policy in Guam to uphold statutes of limitations," it also argues this policy must be balanced against the "equally strong public policy in upholding parties' freedom to contract and upholding the intention of the parties in a contract." Appellant's Reply Br. at 20 (citing 18 GCA § 70101 (2005)); *accord* Appellant's Br. at 17 (arguing

---

[6] Guam's 1970 Code of Civil Procedure section 312 provided: "Civil actions, without exception, can only be commenced within the periods prescribed in this Title, after the cause of action shall have accrued, unless where, in special cases, a different limitation is prescribed by law."  Guam Code Civ. Proc. § 312 (1970).  The *Mailloux* court did not consider whether a contractual waiver of the statute of limitations could qualify as such a "special case" under the statute or any of the public policy concerns inherent in such waivers.

that public policy supports enforcing the statute of limitations waiver (citing *Duenas*, 2012 Guam 4 ¶ 37)). Goodwind asserts that, under 18 GCA § 70101,[7] "the intention of the parties in a contract is paramount, and rights and obligations can be waived *unless such waivers are against public policy*." Appellant's Reply Br. at 20 (emphasis added).

[42]    However, 18 GCA § 70101 applies only to contracts governed by Title 18 and explicitly excludes waivers contrary to public policy. *See* 18 GCA § 70101. It does not override the clear public policy underlying 7 GCA §§ 11101 and 11303(a), which impose a four-year limitations period on written instruments. Thus, it does not validate the Notes' statute of limitations waivers.

[43]    Goodwind also cites *Duenas v. George & Matilda Kallingal, P.C.*, 2012 Guam 4, to support that "clear language of a contract must be interpreted as written even though it contains terms which may be considered 'harsh and unjust' by a court." Appellant's Br. at 17 (quoting 2012 Guam 4 ¶ 37). However, *Duenas* did not involve a conflict between contractual freedom and public policy. In that case, this court ruled that defendant KPC, as the mortgagee, had the right to demand a new lease after the termination of their original lease. *Duenas*, 2012 Guam 4 ¶ 38. Despite the general rule that a leasehold mortgage ends upon lease termination, this court found that the lease terms unambiguously allowed KPC's right to a new lease to survive. *Id.* This court's analysis in *Duenas* focused only on the interpretation of the contract based on its plain and unambiguous language, rather than engaging in a balancing of public policy concerns.[8] The

---

[7] Title 18 GCA § 70101 states:

> Except where it is otherwise declared, *the provisions of the foregoing chapters of this Title, commencing with Division 1, Part 3* hereof, in respect to the rights and obligations of parties to contracts, are subordinate to the intention of the parties, when ascertained in the manner prescribed by Chapter 87 of this Title, on the interpretation of contracts, and the benefit thereof may be waived by any party entitled thereto, *unless such waiver would be against public policy*.

18 GCA § 70101 (2005) (emphases added).

[8] Similarly, other opinions from this court that highlight the importance of enforcing contractual terms as written did not address conflicts with established public policies. *See, e.g.*, *Wasson v. Berg*, 2007 Guam 16; *Camacho v. Camacho*, 1997 Guam 5; *Ramiro v. White*, 2016 Guam 6; *Basil Food Indus. Servs. Corp. v. Guam*, 2019 Guam 29. Thus, they do not support overriding the public policy behind statutes of limitations.

present case implicates strong public policy underlying the statute of limitations—protecting parties from stale claims and promoting fairness—which directly conflicts with enforcing the waivers in the Notes. *Duenas* does not provide adequate grounds to use the freedom to contract to override the public policy goals of upholding the statute of limitations.

[44]     Given (1) the significance of the statute of limitations as a public policy matter and (2) the statutory requirement for a legal exception to extend the statute of limitations, *see* 7 GCA § 11101, we hold that the standard four-year limitations period applies to Goodwind's claims. The *Mailloux* decision does not satisfy the requirement for a "special case where a different limitation is prescribed by law" because (1) Appellate Division decisions are not binding on this court, (2) the *Mailloux* court neglected the applicable Guam law (i.e., GCCP § 312), and (3) the opinion lacks citations to authority on point. The trial court correctly found that the statute of limitations waivers in the Notes were unenforceable under Guam law.

### 3. We deny Goodwind's request to amend its complaint for futility

[45]     Because we have found the statute of limitations waivers unenforceable, Goodwind asks that it be granted leave to amend its complaint. Appellant's Br. at 19. Under GRCP 15(a), after a responsive pleading is served, amendments require either the court's leave or the opposing party's written consent, and "leave shall be freely given when justice so requires." Guam R. Civ. P. 15(a). However, the court may deny a requested amendment for futility if the revised complaint would still be subject to dismissal. *Lujan*, 2018 Guam 27 ¶ 13.

[46]     Goodwind's claims are time-barred on the face of its complaint. No amendment can change the West Bay and Century Notes having been issued around May 2011, and Goodwind not suing until January 2023—more than seven years past the deadline.

[47]     Goodwind contends that the statute of limitations was "equitably tolled" because the Defendants asserted "for the first time" in their counterclaims that the Century Note had been paid

off, "through some form of payroll deduction of Joseph's salary." Appellant's Reply Br. at 26 (citing RA, tab 8 ¶ 45 (Defs.' Answer & Countercl.)). However, equitable tolling does not apply. Even if Goodwind's current management was unaware of this claim until the counterclaims were filed, it should have pursued payment by May 2015 if it believed the Century Note remained unpaid. Because the statute of limitations was not equitably tolled and any amendment would be futile, we deny Goodwind's request to amend its complaint.

## B. We Reject the Defendants' Arguments Raised on Cross-Appeal

[48]    On cross-appeal, the Defendants contend that the trial court erred by: (1) dismissing their fraud and fraud-related counterclaims for lack of sufficient particularity; (2) finding that the parol evidence rule barred evidence of negligent misrepresentation, breach of contract, and breach of the covenant of good faith and fair dealing; (3) dismissing the unjust enrichment counterclaim as time-barred by the statute of limitations; and (4) denying the Defendants' request for leave to amend their counterclaims for futility.

### 1. The trial court did not err in dismissing the Defendants' fraud and fraud-related counterclaims

[49]    The Defendants' first argument on cross-appeal is that the trial court erred in dismissing their fraud and fraud-related counterclaims (i.e., (1) intentional misrepresentation, (2) fraud in the inducement, (3) rescission based upon fraudulent inducement, (4) negligent misrepresentation, and (5) constructive fraud). Appellees' Br. at 10 (Aug. 16, 2024); Appellees' Reply Br. at 5 (Sep. 30, 2024). The trial court did not err in dismissing these counterclaims because they did not meet the heightened pleading standard for fraud-based claims.

#### a. Heightened pleading standard for fraud-related claims

[50]    "With regard to dismissal for failure to plead fraud with particularity pursuant to Rule 9(b), a *de novo* review must 'determine whether the complaint pleaded facts with the requisite

particularity.'" *Taitano I*, 2008 Guam 12 ¶ 9 (quoting *Yourish v. Cal. Amplifier*, 191 F.3d 983, 992 (9th Cir. 1999)).[9]  GRCP 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity," while "[m]alice, intent, knowledge, and other conditions of mind of a person may be averred generally."  Guam R. Civ. P. 9(b).  When interpreting this rule, this court clarified that "two separate elements of the tort of fraud have very different pleading requirements: the fact that a misrepresentation occurred must be plead with particularity [while] the fact that a defendant knew that the misrepresentation was false may be averred generally."  *Taitano I*, 2008 Guam 12 ¶ 19.  "As a justification for [the] minimum level of specificity" required for pleading fraud-related claims, "courts reason that the 'allegations of fraud must be "specific enough to give defendants notice of the particular [fraudulent] misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."'"  *Id.* ¶ 14 (second and third alteration in original) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

[51]    To plead fraud and fraud-related claims with sufficient particularity, the pleading must clearly state the "who, what, when, where, and how" of the alleged fraudulent misconduct.  *See id.* ¶ 14 (citations omitted).  When analyzing the specificity requirement for fraud-related pleadings, this court has also explained that "[w]hile statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient."  *Id.* ¶ 15 (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)).  "For example, accusing a defendant of running a 'sophisticated pyramid scheme' without explaining what makes it a pyramid scheme or why it is fraudulent is a conclusory allegation and therefore insufficient."  *Id.* (quoting *Miron v. Herbalife Int'l, Inc.,* 11 F. App'x 927, 930 (9th Cir. 2001)

---

[9] Because GRCP 9 is modeled on Federal Rule of Civil Procedure ("FRCP") 9, *see* Guam R. Civ. P. 9, SOURCE, we look to federal case law interpreting FRCP 9 for guidance.

(unreported)).  "[E]ven where allegations concern facts peculiarly within defendant's knowledge, the plaintiffs must still state a factual basis for their belief."  *Id.*  This court has stated: "Although under our notice-pleading standard, we must take all factual allegations in the complaint as true, 'we are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Story-Bernardo v. Gov't of Guam*, 2023 Guam 27 ¶ 20 (per curiam) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (citing *Taitano I*, 2008 Guam 12 ¶ 2).

### b. The Defendants' fraud-related counterclaims fail to meet the requisite specificity

[52]     The Defendants fail to clearly state the "who, what, when, where, and how" of the alleged fraudulent misconduct.  *See Taitano I*, 2008 Guam 12 ¶ 14 (citations omitted).  When an allegation of a fraudulent scheme involves multiple actors, the claimant must, at a minimum, identify the role of each actor in this scheme.  *See id.* ¶ 26.  The Defendants argue that "[t]he 'who' requirement really arises only in a case involving multiple defendants, which requires the plaintiff to identify the role of each defendant in the fraud.  [But] [h]ere, there is only one alleged fraudfeasor: Goodwind."  Appellees' Reply Br. at 11 n.2 (citing *Taitano I*, 2008 Guam 12 ¶ 26).  This is not a convincing application of *Taitano I*.

[53]     In *Taitano I*, the plaintiff's complaint pleading fraud did not identify the specific officers and representatives of the corporation accused of fraud.  2008 Guam 12 ¶ 27.  However, in determining this was "not a fatal defect," this court relied on the fact that "that information may be entirely within the control of the defendant."  *Id.*  This court distinguished the facts of *Taitano I* from other cases where the plaintiffs had been longtime employees of the defendant corporation.  *Id.* (citing *SmithKline Beecham*, 245 F.3d at 1052).  As we observed, in *SmithKline Beecham*, the Ninth Circuit rejected a pleading for failing to identify the defendant's employees who took part

in the alleged fraud "only because plaintiff was also an employee of defendant for almost 20 years." *Id.* (citing *SmithKline Beecham*, 245 F.3d at 1052).

[54]    Here, like in *SmithKline Beecham*, Rowena (the representative and sole shareholder of West Bay and representative and shareholder of Century) and Joseph (the representative of West Bay and representative and shareholder of Century) were employees of Goodwind and held officer positions for decades. In their counterclaims, the Defendants even state that "[a]t all times relevant herein, that throughout the time Rowena and Joseph were on Guam, they were the Treasurer and managing director, respectively, [and] were the agents of Tan and Counter-Defendant GDC . . . ." RA, tab 8 ¶ 11 (Defs.' Answer & Countercl.) (emphases omitted). When the Notes were issued in 2011, Rowena and Joseph were officers and "agents" of Goodwind themselves.

[55]    The Defendants' counterclaims center on allegations of a fraudulent scheme that involves multiple actors from a corporation where they were officers and agents at the time of the alleged fraudulent misconduct. To plead their fraud and fraud-related claims with sufficient particularity, the Defendants needed to identify in their counterclaims the roles of specific employees of Goodwind who were responsible for the alleged fraudulent scheme. Instead, the Defendants made broad claims about Goodwind without clearly identifying the specific employees responsible for the misrepresentations or other fraudulent conduct. *See id.* ¶¶ 35, 37, 48, 66-68, 72, 74, 77, 84-86, 92-93, 96, 104, 106, 114, 121-23, 129, 131, 137-38. In their counterclaims, the Defendants did not identify the specific employee(s) of Goodwind responsible for making them believe that (1) they would never have to repay the West Bay Note, *see id.* ¶¶ 35, 66-67, 72, 75, 93, 114; (2) Goodwind would pay for any portion of the SFOB loan, *see id.* ¶¶ 48, 67, 72, 84, 93, 129, 131; or (3) Goodwind would pay for their operating expenses and other loans, *see id.* ¶¶ 37, 48, 67, 93, 129, 131.

[56]    The few times the Defendants identified specific Goodwind employees' actions in their counterclaims were insufficient to make the "who, what, when, where, and how" of the alleged fraudulent scheme sufficiently clear.  For example, the Defendants reference "Tan and Counter-Defendant GDC's misrepresentations" but articulate no particular misrepresentations Tan specifically made to them.  *See id.* ¶ 78 (emphases omitted).  Instead, the Defendants attempt to connect Tan to the alleged fraud by asserting that Goodwind is Tan's "alter ego" and by referring to Tan's "tacit approval."  *See id.* ¶¶ 6, 34, 53.  The Defendants also allege that Tan confirmed his approval of the Garage acquisition to Joseph.  *Id.* ¶ 26.  However, approval of the acquisition alone is not evidence of fraudulent misconduct.  *See In re ZAGG Inc. S'holder Derivative Action*, 826 F.3d 1222, 1234 (10th Cir. 2016).  Because fraudulent misrepresentations must be pleaded with particularity, these references to Tan are insufficient to tie him to the alleged fraudulent scheme.

[57]    The Defendants also allege that President Chiang and CFO Onglao discussed the Garage acquisition with Tan, who subsequently approved.  RA, tab 8 ¶ 25 (Defs.' Answer & Countercl.).  However, as discussed above, approval of the acquisition alone is not evidence of fraudulent misconduct.

[58]    In paragraph 30 of their counterclaims, the Defendants allege that Onglao "endorsed the recommendation [to] . . . pay Rowena's *taxes and expenses*" in his March 3, 2011, email to Joseph and Chiang and attached as Exhibit C to the counterclaims.  *Id.* ¶ 30; *id.*, Ex. C at 1 (Email, Mar. 3, 2011) (emphasis added).  However, the email merely conveys E&Y's recommendation that "GDC will pay for Rowena's *taxes* in California and Guam in so far as California LLC is concerned."  *See id.*, Ex. C at 1 (Email, Mar. 3, 2011) (emphasis added).  The Defendants also assert that in this email, Onglao endorsed consultants' advice to use Rowena as Goodwind's representative for the California company.  RA, tab 8 ¶ 30 (Defs.' Answer & Countercl.).  However, an email proposing to pay for Rowena's taxes and to use Rowena to "represent GDC

Guam in [the] California LLC" is not a promise that Goodwind would refrain from collecting on the Notes, pay for the SFOB loan, or cover non-Goodwind operating expenses. *See id.*, Ex. C at 1 (Email, Mar. 3, 2011).

[59]     The Defendants assert that Rowena agreed to be the "nominee shareholder" of the California LLC "in the place of Counter-Defendant GDC" "[b]ased on Counter-Defendant GDC's CFO/VP Willy Onglao's and its President's [Chiang's] representations, and advice from Deloitte and E&Y, and Tan's tacit approval." RA, tab 8 ¶ 34 (Defs.' Answer & Countercl.) (emphases omitted). This does not sufficiently connect Onglao, Chiang, or Tan to the alleged "promises and assurances" that Goodwind would refrain from demanding repayment under the Notes, pay for the SFOB loan, or cover operating expenses. The Defendants then allege that "Onglao advised Rowena for West Bay to execute a $750,000.00 Promissory Note ('West Bay Note') in favor of [Goodwind] on or about May 2011." *Id.* ¶ 34 (emphases omitted). However, encouraging the execution of a promissory note is not promising that the note "was never intended to be repaid back." *See id.* ¶ 35.

[60]     The Defendants allege that Onglao "managed and conducted the business operations of the Garage" following its purchase and was "instrumental in conducting the litigation the Garage was involved with in California." *Id.* ¶ 46. But the acts of managing and conducting business operations and involvement in litigation do not constitute evidence of any promises or assurances that Goodwind would refrain from collecting on the Notes, pay for the SFOB loan, or cover other expenses.

[61]     For the first time in their reply brief, the Defendants claim they "identified CFO/VP Onglao as one of Goodwind's executives who made the misrepresentations" in their counterclaims. Appellees' Reply Br. at 11 n.2. However, the Defendants did not explicitly connect Onglao with the alleged misrepresentations in their counterclaims. The Defendants' most plausible argument

is that Onglao stated in an email that "GDC will pay for Rowena's taxes in California and Guam in so far as California LLC is concerned." *See* RA, tab 8, Ex. C at 1 (Email, Mar. 3, 2011). However, when looking at this statement within the full context of the email in Exhibit C and the information in paragraph 30, it is apparent that this statement was part of Onglao's conveyance of E&Y's recommendations. In the same email, Onglao also presented Deloitte's alternative recommendation that Goodwind form a California corporation that "will represent GDC Guam in [the] California LLC" instead of Rowena. *See id.*

[62] Ultimately, the Defendants' allegations fall short of the heightened pleading standard under GRCP 9(b); their counterclaims fail to identify the specific actors, statements, or circumstances necessary to support fraud-based causes of action. Each counterclaim was pleaded without the requisite specificity, as discussed below.

### i. *Intentional misrepresentation, fraud in the inducement, and rescission*

[63] The Defendants failed to plead with the requisite specificity their counterclaims for intentional misrepresentation and fraud in the inducement. Guam's legal definition of actual fraud within the context of a contractual relationship requires one of the following acts:

> 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true[;]
>
> 2. A positive assertion in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;
>
> 3. The suppression of that which is true, by one having knowledge or belief of the fact;
>
> 4. A promise made without any intention of performing it; or,
>
> 5. Any other act fitted to deceive.

18 GCA § 85308 (2005). The elements of a cause of action for both fraud and intentional misrepresentation are: "(1) a misrepresentation; (2) knowledge of falsity (or scienter); (3) intent to

defraud to induce reliance; (4) justifiable reliance; and (5) resulting damages." *Taitano I*, 2008 Guam 12 ¶ 12 (citation omitted); *Hemlani v. Flaherty*, 2003 Guam 17 ¶ 9 ("The tort of intentional misrepresentation has the same elements as fraud.").

[64]    "Fraud in the inducement is a subset of the tort of fraud" that occurs when a party's assent to a contract is induced by "misrepresentations or concealment." *See Hinesley v. Oakshade Town Ctr.*, 37 Cal. Rptr. 3d 364, 367, 372 (Ct. App. 2005). When a party's consent to a contract results from fraudulent inducement, that party has the right to rescind the contract. *See* 18 GCA § 89202 (2005).

[65]    Even if Onglao in his email was endorsing E&Y's recommendation to use Rowena to represent Goodwind in investing in the California LLC, the Defendants did not connect the dots by sufficiently pleading in their counterclaims that: (1) *Onglao misrepresented* that Goodwind would pay for the Defendants' taxes (or other expenses); (2) *Onglao* knew this was a misrepresentation; (3) *Onglao intended* to defraud the Defendants to induce reliance upon this conscious misrepresentation when signing the Notes; (4) the Defendants justifiably relied upon *Onglao's* misrepresentation; and (5) the Defendants suffered *ascertainable* damages as the direct result of relying upon *Onglao's* misrepresentation. Instead, the Defendants pleaded the elements of intentional misrepresentation and fraud in the inducement by making general references to Goodwind as the responsible party, *see* RA, tab 8 ¶¶ 37, 48, 66-68, 72, 74-75, 77, 84-86 (Defs.' Answer & Countercl.), or by failing to identify any responsible party at all, *see, e.g.*, *id.* ¶ 35 ("The West Bay Note was never intended to be repaid back to GDC . . . ." (emphasis omitted)). Their intentional misrepresentation and fraud in the inducement counterclaims were pleaded without the requisite specificity. Because the Defendants did not sufficiently plead that their consent to the Notes resulted from fraudulent inducement, the Defendants' counterclaim for rescission based upon fraudulent inducement fails as well. *See id.* ¶¶ 120-27.

### ii. *Negligent misrepresentation*

[66]    Defendants also failed to plead their negligent misrepresentation counterclaim with requisite specificity.  "[N]egligent misrepresentation does not require knowledge of falsity," *Thrifty Payless, Inc. v. The Americana at Brand, LLC*, 160 Cal. Rptr. 3d 718, 725 (Ct. App. 2013), but instead requires: (1) "misrepresentation of a past or existing material fact," (2) lack of "reasonable grounds" to believe it was true, (3) "intent to induce another's reliance" on the misrepresentation, (4) "ignorance of the truth and justifiable reliance . . . by the party to whom the misrepresentation was directed, and (5) damages."  *Flaherty*, 2003 Guam 17 ¶ 9 (quoting *Fox v. Pollack*, 226 Cal. Rptr. 532, 537 (Ct. App. 1986)); *Thrifty Payless*, 160 Cal. Rptr. 3d at 725.

[67]    The Defendants also did not adequately link their allegations to the requisite elements of negligent misrepresentation in their counterclaims that: (1) *Onglao misrepresented* that Goodwind would pay for the Defendants' taxes (or other expenses); (2) there was no reasonable grounds for *Onglao* to believe that Goodwind would pay for Rowena's taxes (or other expenses); (3) *Onglao intended* to induce the Defendants' reliance on the notion that Goodwind would pay for Rowena's taxes (or other expenses) when signing the Notes; (4) the Defendants were ignorant of the truth that Goodwind would not pay for Rowena's taxes (or other expenses) and justifiably relied thereon when signing the Notes; and (5) the Defendants suffered *ascertainable* damages as the direct result of relying upon *Onglao's* misrepresentation.  Instead, the Defendants pleaded the elements of negligent misrepresentation by making general references to Goodwind as the responsible party, *see* RA, tab 8 ¶¶ 37, 48, 92-93, 96 (Defs.' Answer & Countercl.), or by failing to identify any responsible party at all, *see, e.g.*, *id.* ¶ 35.  Their negligent misrepresentation counterclaim lacks the requisite specificity.

//

//

### iii.   *Constructive fraud*

**[68]**    "The elements of a cause of action for constructive fraud are (1) a fiduciary relationship; (2) non-disclosure; (3) intent to deceive; and (4) reliance and resulting injury (causation)." *Gayle*, 2000 Guam 25 ¶ 41 (quoting *Gen. Am. Life Ins. Co. v. Rana*, 769 F. Supp. 1121, 1126 (N.D. Cal. 1991)).  However, the law does not require that "the fiduciary relationship element of constructive fraud constitute the legal requirements of establishing a fiduciary duty." *See id.*  "In cases of constructive fraud, the term 'fiduciary relationship' has been used synonymously with the term confidential relationship." *See id.* (quoting *Gen. Am. Life Ins.*, 769 F. Supp. at 1127).  "Further, the breach of duty referred to in [18 GCA § 85309 (2005)] must be one created by the confidential relationship." *See id.*

**[69]**    The Defendants likewise failed to draw a sufficient connection between the alleged facts and the elements of constructive fraud in their counterclaims that: (1) a fiduciary relationship existed between the Defendants and *Onglao*; (2) *Onglao* did not disclose to the Defendants that Goodwind would not pay for the Defendants' taxes (or other expenses); (3) *Onglao intended* to deceive the Defendants; (4) the Defendants relied upon *Onglao's* misrepresentations; and (5) the Defendants suffered *ascertainable* damages as the direct result of this reliance.  Instead, the Defendants pleaded the elements of constructive fraud by making general references to Goodwind, *see* RA, tab 8 ¶¶ 37, 48, 104, 106 (Defs.' Answer & Countercl.), or by failing to identify any responsible party at all, *see, e.g.*, *id.* ¶ 35.  They fail to allege constructive fraud with the requisite specificity.

**[70]**    Despite pleading that Onglao indicated to Joseph that Goodwind would pay for Rowena's taxes, the Defendants do not specifically connect Onglao with each element of their fraud-related counterclaims.  Moreover, the Defendants allege that Onglao was *just* "*one* of Goodwind's executives who made the misrepresentations," Appellees' Reply Br. at 11 n.2 (emphasis added).

If multiple Goodwind executives allegedly made fraudulent misrepresentations to the Defendants, particularly while the Defendants were officers and agents of Goodwind themselves, the Defendants should have made the identity and role of each such executive more explicit in their counterclaims. The Defendants also should have articulated how particular actors' specific conduct satisfied each element of their counterclaims. Instead, the Defendants' counterclaims do not sufficiently state the "who, what, when, where, and how" of the alleged fraudulent misconduct. Ultimately, none of the Defendants' counterclaims satisfy the specificity requirement under the heightened pleading standard for fraud-related claims. The trial court did not err in dismissing them.

**2. The trial court erred in holding that the parol evidence rule barred evidence of negligent misrepresentation but correctly held that it barred evidence of breach of contract and breach of the covenant of good faith and fair dealing**

**[71]** The Defendants' second argument on cross-appeal is that the trial court improperly applied the parol evidence rule to exclude evidence of negligent misrepresentation, breach of contract, and breach of the implied covenant of good faith and fair dealing. Appellees' Br. at 12.

**[72]** Under Guam's parol evidence rule, generally:

> When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives, or successors in interest, *no evidence of the terms of the agreement other than the contents of the writing . . . .*

6 GCA § 2511 (2005) (emphasis added). Written contract terms supersede all prior negotiations and stipulations. 18 GCA § 86107 (2005); *Leong v. Deng*, 2002 Guam 2 ¶ 17.

**[73]** The parol evidence rule applies only to integrated agreements. *Craftworld Interiors, Inc. v. King Enters., Inc.*, 2000 Guam 17 at unnumbered ¶ 11. To determine integration, courts assess whether the writing appears on its face to be a complete agreement. *See, e.g., Founding Members of Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 135 Cal. Rptr. 2d 505, 512

(Ct. App. 2003) ("In considering whether a writing is integrated, the court must consider the writing itself, including whether the written agreement appears to be complete on its face; whether the agreement contains an integration clause; whether the alleged parol understanding on the subject matter at issue might naturally be made as a separate agreement; and the circumstances at the time of the writing."). If an agreement appears to be complete and specific, it is presumed to be an integrated agreement unless proven otherwise. *See* Restatement (Second) of Contracts § 209(3) (A.L.I. 1981).

[74]     The Century Note[10] and the West Bay Note[11] each have terms governing the loans, including borrower and lender identities, principal amounts, repayment conditions, governing law, and modification restrictions. Given their apparent completeness, both Notes are integrated agreements, and the parol evidence rule applies.

---

[10] The Century Note identifies the following information on its face: (1) Century and Goodwind are parties to the Century Note, as the borrower and lender, respectively; (2) $120,000 is the amount Century is to pay to Goodwind; (3) there shall be no interest on the loan; (4) the full principal amount is due within 30 days of demand; (5) the Century Note is governed by Guam law; (6) the terms of the Century Note may not be "waived, altered, modified or amended except as [Goodwind] may consent thereto in writing"; (7) Century may not assign the Century Note to another party without Goodwind's prior written consent; and (8) Goodwind may assign the Century Note without Century's consent. RA, tab 1 (Compl., Jan. 20, 2023), Ex. C at 1-3 (Century Note, 2011). The Century Note also includes signatures for both Century and Goodwind. *Id.*, Ex. C at 3 (Century Note). By including these terms, the Century Note appears to be a complete agreement, and the parol evidence rule applies.

[11] The West Bay Note identifies the following information on its face: (1) West Bay and Goodwind are parties to the West Bay Note, as the borrower and lender, respectively; (2) $750,000 is the amount West Bay is to pay to Goodwind; (3) there shall be no interest on the loan; (4) the full principal amount is due within 30 days of demand; (5) the West Bay Note is governed by Guam law; and (6) the terms of the West Bay Note may not be "waived, altered, modified or amended except as [Goodwind] may consent thereto in writing." RA, tab 1 (Compl.), Ex. A at 1-2 (West Bay Note, 2011). The copy of the West Bay Note attached to Goodwind's complaint as Exhibit A is missing at least one page, leaving the provision regarding assignment rights incomplete. *See id.*, Ex. A at 1-2 (West Bay Note). Exhibit A is also lacking signatures by West Bay and Goodwind. *See id.*, Ex. A at 1-2 (West Bay Note). However, the Defendants confirmed that the West Bay Note was signed. *See* RA, tab 23 at 2 (Defs.' Mot. Dismiss, July 27, 2023) ("The following facts remain undisputed: The two promissory notes were prepared and *signed* '[i]n or around May 2011.'" (emphasis added) (quoting RA, tab 1 at 2 ¶¶ 5, 10 (Compl.)).

To support their argument that the Notes are not integrated agreements, the Defendants merely argue that the no-oral-modification clause in each Note "was insufficient, in and of itself, to conclusively prove that the parties intended the promissory notes to be fully integrated documents." Appellees' Br. at 14. However, when looking at the no-oral-modification clause in conjunction with (1) the other terms included in the West Bay Note and (2) the fact that the Defendants acknowledged that the West Bay Note was signed, the West Bay Note appears to be a complete agreement. Accordingly, the parol evidence rule likewise applies to the West Bay Note.

[75]    We find that the parol evidence rule applies to the Notes.  Thus, the next inquiry is whether an exception permits extrinsic evidence of negligent misrepresentation, breach of contract, or breach of the implied covenant of good faith and fair dealing.

### a.  Exceptions to the parol evidence rule

[76]    Guam law recognizes exceptions to the parol evidence rule, including (1) the "validity exception," which allows evidence challenging a contract's validity, and (2) the "fraud exception," which permits evidence of fraud, even if it contradicts the written terms.  *See* 6 GCA § 2511; *Torres v. Torres*, 2005 Guam 22 ¶ 28.  These exceptions exist because the parol evidence rule protects valid written contracts, not those procured through fraud or other invalidating causes.  *See Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 291 P.3d 316, 319 (Cal. 2013) (analyzing same exceptions under California law).  "Evidence to prove that the instrument is void or voidable" is admissible "because it shows that the purported instrument has no legal effect" rather than "contradict[ing] the terms of an effective integration."  *Id.* at 319 (quoting 2 Witkin, Cal. Evid. 5th *Docu Evid* § 97 (5th ed. 2012)).  Guam's parol evidence rule also "does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in § 2515 [Circumstances to be Considered]."[12]  6 GCA § 2511; *Torres*, 2005 Guam 22 ¶¶ 28, 30.

[77]    This court looks to California law to aid in the interpretation of the exceptions to the parol evidence rule.  *See Torres*, 2005 Guam 22 ¶¶ 33-35 ("[B]ecause California is the source of Title 6 GCA §§ 2511 and 2515, then 'we look to the substantial precedent developed within that state to

---

[12] Title 6 GCA § 2515 states:

> For the proper construction of an instrument, the circumstances under which it is made, including the situation of the subject of the instrument and of the parties to it, may also be shown so that the judge or jury be placed in the position of those whose language he is or they are to interpret.

6 GCA § 2515 (2005).

assist in interpreting parallel Guam provisions.'" (citations omitted)).[13]  Adopting California's approach, extrinsic evidence offered under 6 GCA § 2515 "cannot contradict the written document" *unless* it falls under one of the exceptions to 6 GCA § 2511, which includes the validity and fraud exceptions.  *See Torres*, 2005 Guam 22 ¶ 35.  This restriction applies "regardless [of] whether the writing is intended by the parties as a final, complete, and exclusive statement of those terms."  *See id.* (quoting Cal. Civ. Proc. Code § 1856 (Law Revision Cmts. to 1978 Amendment)).

[78]    In their counterclaims, the Defendants alleged that they made agreements with Goodwind outside of their written contracts (i.e., the West Bay and Century Notes) by which West Bay would never have to repay Goodwind under the West Bay Note and Goodwind would pay for a share of their operating expenses, taxes, and loans.  *See, e.g.*, RA, tab 8 ¶¶ 35, 37, 48 (Defs.' Answer & Countercl.).  These alleged agreements are not included in the written terms of the Notes and constitute parol evidence.

[79]    In its October 11, 2023 Decision and Order, the trial court held that the parol evidence rule barred evidence of the Defendants' counterclaims for (1) negligent misrepresentation, (2) breach of contract, and (3) breach of the implied covenant of good faith and fair dealing.  RA, tab 29 at 6-9 (Dec. & Order, Oct. 11, 2023).

### b.  Parol evidence rule and negligent misrepresentation

[80]    The trial court cited the elements for negligent misrepresentation from *Hemlani v. Flaherty*, 2003 Guam 17, and noted that "[t]o be liable for negligent misrepresentation, the defendant need act only negligently and not dishonestly or in bad faith."  RA, tab 29 at 6-7 (Dec. & Order) (citing

---

[13] "The source of 6 GCA § 2511 is California Civil Procedure Code § 1856, and the source of 6 GCA § 2515 is California Civil Procedure Code § 1860.  Sections 1856 and 1860 were enacted in 1953, and the California codes were acknowledged as the source of Guam's statutes." *Torres v. Torres*, 2005 Guam 22 ¶ 33 n.6 (citing Foreword (1953) to Guam Code of Civil Procedure (1970)).

*Florenzano v. Olson*, 387 N.W.2d 168, 173 (Minn. 1986)). The court concluded that the fraud exception to the parol evidence rule did not apply. *Id.* at 7.

[81] The majority view in U.S. jurisdictions is that the parol evidence rule does not apply to negligent misrepresentation claims. *See Rempel v. Nationwide Life Ins. Co.*, 370 A.2d 366, 370 (Pa. 1977). However, courts reach this conclusion through differing rationales: (1) some assert that the rule applies strictly to contract claims and not to tort claims like negligent misrepresentation;[14] (2) others find that negligent misrepresentation claims fall within the fraud or validity exceptions.[15] A third group of courts has held that the parol evidence rule applies to negligent misrepresentation claims when the claim improperly infuses a tort cause of action into a contractual relationship to circumvent the parol evidence rule and enforce extra-contractual promises.[16]

---

[14] Many jurisdictions hold that the parol evidence rule is a substantive principle of contract law that does not extend to tort actions. *See, e.g.*, *Formento v. Encanto Bus. Park*, 744 P.2d 22, 26 (Ariz. Ct. App. 1987) (holding that parol evidence rule cannot shield defendants from their own misrepresentations); *Keller v. A.O. Smith Harvestore Prods., Inc.*, 819 P.2d 69, 73 (Colo. 1991) (en banc) (holding that parol evidence rule is rule of substantive contract law and does not apply to tort actions in Colorado); *Wilburn v. Stewart*, 794 P.2d 1197, 1199 (N.M. 1990) ("[P]arol evidence is admissible to show any misrepresentations that induced the parties to contract . . . ."); *Gilliland v. Elmwood Props.*, 391 S.E.2d 577, 580-81 (S.C. 1990) (adopting *Formento*'s reasoning); *Ramsay Health Care, Inc. v. Follmer*, 560 So. 2d 746, 748 (Ala. 1990) ("[T]he parol evidence rule applies to contract actions, not actions in tort."); *Vigortone AG Prods., Inc. v. PM AG Prods., Inc.*, 316 F.3d 641, 644 (7th Cir. 2002) (determining that parol evidence rule does not apply to tort claims, regardless of presence of integration clause). This view prevents parties from using the parol evidence rule to shield themselves from liability for fraudulent or negligent misrepresentations. *Cabinet Distribs., Inc. v. Redmond*, 965 S.W.2d 309, 314 (Mo. Ct. App. 1998).

[15] A second group of courts allows evidence of negligent misrepresentation under the fraud or validity exceptions. *See, e.g.*, *TTCP Energy Fin. Fund II, LLC v. Ralls Corp.*, 255 F. Supp. 3d 1285, 1290 (N.D. Ga. 2017) ("Under Georgia law, the parol evidence rule and the presence of a merger clause do not generally bar a claim for fraud or negligent misrepresentation when 'one of the parties interfered with the *ability* of the other to ascertain the real nature of the bargain into which he was entering.'" (quoting *Schlange-Schoeningen v. Parrish*, 767 F.2d 788, 793 (11th Cir. 1985))); *Rubberlite, Inc. v. Baychar Holdings, LLC*, 737 F. Supp. 2d 575, 582-83 (S.D. W. Va. 2010) (finding that neither parol evidence rule nor integration clause in license agreement barred claim alleging negligent misrepresentations and omissions).

[16] A third group of courts has held that the parol evidence rule does apply to negligent misrepresentation claims when "a tort cause of action is being infused into a contractual relationship." *See Snyder v. Lovercheck*, 992 P.2d 1079, 1088 (Wyo. 1999); *see also Rio Grande Jewelers Supply, Inc. v. Data Gen. Corp.*, 689 P.2d 1269, 1270-71 (N.M. 1984) (characterizing negligent misrepresentation claim as "nothing more than an attempt to circumvent the operation of the Commercial Code and to allow the contract to be rewritten under the guise of an alleged action in tort"); *Sound Techs., Inc. v. Hoffman*, 737 N.E.2d 920, 926-27 (Mass. App. Ct. 2000) ("[W]e think mistaken the notion that the parol evidence rule has no application in this tort action." (citations omitted)).

[82]	We adopt the view that the parol evidence rule is a substantive rule of contract law and does not apply to the tort of negligent misrepresentation. This approach aligns with the majority view as well as this court's earlier rulings. *See, e.g.*, *Maeda Pac. Corp. v. GMP Haw., Inc.*, 2011 Guam 20 ¶ 30 (emphasizing the importance of "[e]nforcing the boundary between tort and contract law" within context of economic loss doctrine (quoting Vincent R. Johnson, *The Boundary-Line Function of the Economic Loss Rule*, 66 Wash. & Lee L. Rev. 523, 570 (2009))); *Gov't of Guam v. Kim*, 2015 Guam 15 ¶ 25 (reiterating need for "[d]rawing a legal line between contract and tort liability" (quoting *Maeda*, 2011 Guam 20 ¶ 25)); *Antonio B. Won Pat Int'l Airport Auth. v. DFS Guam L.P.*, 2023 Guam 7 ¶ 42 (per curiam) (noting that certain laws govern only tort cases, but not contract cases).

[83]	Under this framework, the trial court erred in holding that the parol evidence rule bars evidence of negligent misrepresentation. However, this court may affirm the trial court's judgment "on any ground supported by the record." *See People v. San Nicolas*, 2001 Guam 4 ¶ 29. The fraud and validity exceptions to the parol evidence rule do not save claimants who have failed to plead fraud or fraud-related claims with sufficient particularity. *See Reeder v. Specialized Loan Servicing LLC*, 266 Cal. Rptr. 3d 578, 586 (Ct. App. 2020). The Defendants did not plead their negligent misrepresentation counterclaim with sufficient particularity. Therefore, we affirm dismissal of this claim.

### c.  Application of the parol evidence rule to breach of contract and breach of implied covenant of good faith and fair dealing

[84]	Before applying the parol evidence rule to the Defendants' breach counterclaims, the trial court identified the elements of a breach of contract claim: "(1) the existence of the contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach, and (4) resulting damages to the plaintiff." RA, tab 29 at 7 (Dec. & Order) (citing *Hemlani v. Hemlani*,

2015 Guam 16). Because "none of the elements contain anything about fraud," the trial court concluded that "the fraud exception does not apply, and the parol evidence rule forbids the court from referencing extrinsic evidence to interpret, vary, or add to the terms of an unambiguous written agreement." *Id.* (citing *Wasson*, 2007 Guam 16 ¶ 11).

[85]     We affirm the trial court's conclusion that the exceptions to the parol evidence rule do not apply to the Defendants' breach of contract claims on other grounds: the validity and fraud exceptions apply only to claims seeking to invalidate a contract, while a breach of contract claim presumes the contract's validity. To allow parol evidence of a breach of contract under the validity or fraud exceptions would contravene the very purpose of the exceptions. Without parol evidence, the Defendants cannot substantiate their breach of contract counterclaim. We affirm the trial court's dismissal of this counterclaim.

[86]     The trial court also explained that the "covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Id.* at 7-8 (quoting *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 639 (Cal. 1995)). The court emphasized that the covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id.* at 8 (quoting *Quijano v. Atkins-Kroll, Inc.*, 2008 Guam 14 ¶ 2 n.2).

[87]     As with breach of contract claims, the validity and fraud exceptions to the parol evidence rule do not apply to claims of breach of the implied covenant of good faith and fair dealing because such claims also rest on the premise that a valid contract exists. Allowing parol evidence under these exceptions would contradict their intended function. Without parol evidence, the Defendants lack a viable claim for breach of the implied covenant of good faith and fair dealing. The trial

court did not err when it held the parol evidence rule barred evidence of breach of the implied covenant of good faith and fair dealing. We affirm the dismissal.

### 3. The trial court erred in dismissing the Defendants' unjust enrichment counterclaim as time-barred by the statute of limitations; however, we affirm the dismissal on alternative grounds

[88]     The Defendants' third argument on cross-appeal is that the trial court erred in dismissing their unjust enrichment counterclaim as time-barred by the statute of limitations. Appellees' Br. at 17-18 (citing RA, tab 29 at 10 (Dec. & Order)).

[89]     A claim for unjust enrichment requires: (1) a benefit conferred by one party to another; (2) the recipient's knowledge or appreciation of the benefit; and (3) circumstances making it inequitable for the recipient to retain the benefit without payment. *In re Guardianships of Moylan*, 2011 Guam 16 ¶ 69 (quoting *Rawlings v. Rawlings*, 2010 UT 52, ¶ 29, 240 P.3d 754). Generally, the statute of limitations is three years for an unjust enrichment claim that arises from fraud, as well as from contracts and obligations not founded upon an instrument of writing. *See* 7 GCA §§ 11305(d), (h) (2005). Under 7 GCA § 11305(d), a fraud-based claim accrues upon discovery of the facts constituting the fraud. This court has interpreted the discovery rule to mean the statute of limitations begins to run when the claimant suspects, or should suspect, wrongdoing. *See Gayle*, 2000 Guam 25 ¶ 24.

[90]     The Defendants' unjust enrichment counterclaim is based on their allegation that Goodwind "fail[ed] to pay its share of the SFOB loan and other expenses." Appellees' Br. at 17 (citing RA, tab 8 ¶¶ 137-43 (Defs.' Answer & Countercl.)). They contend that there was an agreement between Goodwind and the Defendants outside of their written contracts (i.e., the West Bay and Century Notes), providing that West Bay would never have to repay Goodwind under the West Bay Note, while Goodwind would cover a share of their operating expenses, taxes, and loans. *See, e.g.*, RA, tab 8 ¶¶ 35, 37, 48, 141 (Defs.' Answer & Countercl.). In their counterclaims, the

Defendants argued that "[b]oth West Bay and Century have been paying more than their proportionate share of the SFOB loan and other expenses have in fact been paying for [Goodwind's] share of the SFOB loan and other expenses." *Id.* ¶ 140 (emphases omitted). The Defendants further allege that Goodwind "has received the benefits and has been unjustly enriched by having ownership of West Bay and SFOB without paying for its share of the SFOB loan and other expenses, at the expense of West Bay and Century." *Id.* ¶ 141 (emphases omitted). The trial court dismissed this counterclaim as time-barred by the three-year statute of limitations under 7 GCA § 11305(h). RA, tab 29 at 10 (Dec. & Order). The trial court reasoned that the Defendants "had over ten years to notice that [Goodwind] was not paying their debts," which should have caused the Defendants to suspect that Goodwind had done something wrong to them. *Id.*

[91]    However, the Defendants point out that "[i]n so concluding, the Court assumed a fact that was not alleged by the Defendants, namely, that Goodwind had not paid its debts for more than ten years." Appellees' Br. at 18. The Defendants argue that they "specifically alleged [in their counterclaims] that Goodwind paid expenses related to the garage and that they had no suspicion that Goodwind would not continue to pay expenses until after May 2022." *Id.* (citing RA, tab 8 ¶¶ 48, 60 (Defs.' Answer & Countercl.)). There is therefore a dispute as to the facts that would determine when the Defendants should have suspected the alleged wrongdoing, thereby triggering the statute of limitations. We agree with the Defendants that:

> [When] properly construed in the light most favorable to the Defendants, their allegations are sufficient to, at the very least, raise a question of fact not properly decided on a motion to dismiss as to whether they should have suspected more than three years before this action was filed that Goodwind would no longer pay its share of the SFOB loan and other expenses.

*Id.* Thus, the trial court erred in holding that the Defendants' unjust enrichment claim was barred by the statute of limitations. However, as discussed below, we affirm the trial court's dismissal of

the unjust enrichment counterclaim on separate grounds supported by the record. *See San Nicolas*, 2001 Guam 4 ¶ 29.

### a. The Defendants' unjust enrichment counterclaim fails as derivative of their dismissed fraud-based counterclaims

[92]    A dispositive issue is whether an unjust enrichment claim premised on the same factual allegations as fraud-related claims can survive independently when the underlying fraud claims have been dismissed. Other courts addressing similar issues—including the First, Third, Fifth, Sixth, Seventh, and Eighth Circuits[17]—have held that unjust enrichment claims based on the same facts as fraud-related claims will not survive if the related claims fail.

[93]    For example, the Seventh Circuit has clarified that although "fraud is not an indispensable element of an unjust enrichment claim," an unjust enrichment claim grounded in the same fraudulent conduct cannot survive if the related fraud claim fails. *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("[W]hen the plaintiff's particular theory of unjust enrichment is based on alleged fraudulent dealings and we reject the plaintiff's claims that those dealings, indeed, *were* fraudulent, the theory of unjust enrichment that the plaintiff has

---

[17] The Second Circuit has not directly ruled on this issue but has recognized that "New York law does not permit recovery on an unjust enrichment claim that is duplicative of a conventional tort claim." *Gov't Emps. Ins. Co. v. Mayzenberg*, 121 F.4th 404, 413 (2d Cir. 2024).

Similarly, while the Ninth Circuit has not squarely addressed this issue, it has "construed the common law" to permit unjust enrichment claims in California either as "an independent cause of action or as a quasi-contract claim for restitution." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). In *ESG Capital*, the Ninth Circuit explained that "[t]o allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Id.* at 1038-39 (citing *Lectrodryer v. SeoulBank*, 91 Cal. Rptr. 2d 881 (Ct. App. 2000)). The court determined the plaintiff satisfied this standard by relying on the same factual allegations of material representations that supported its federal securities fraud and state fraud claims. *See id.* at 1032-36, 1038-39. The Ninth Circuit concluded that the plaintiff adequately pleaded its federal and state law fraud claims as well as its unjust enrichment claim as an independent cause of action. *See id.* The court also determined that "[a]lternatively, ESG Capital's allegation of fraud resulting in the defendants' unjust enrichment sufficiently state[d] a claim under quasi-contract." *Id.* at 1039. The Ninth Circuit, however, did not address how an unjust enrichment claim should be treated when it is based on the same conduct alleged in a related claim that has been properly dismissed.

pursued is no longer viable." (citing *Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436 (7th Cir. 1996))).  The Seventh Circuit has further explained:

> Unjust enrichment is a common-law theory of recovery or restitution that arises when the defendant is retaining a benefit to the plaintiff's detriment, and this retention is unjust.  What makes the retention of the benefit unjust is often due to some improper conduct by the defendant.  And usually this improper conduct will form the basis of another claim against the defendant in tort, contract, or statute.  So, if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim— and, of course, unjust enrichment will stand or fall with the related claim.

*Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) (footnote omitted).  We find this reasoning persuasive.

[94]     The First, Third, Fifth, Sixth, and Eighth Circuits have similarly held that an unjust enrichment claim that rests on the same improper conduct alleged in another claim will rise or fall with that claim.  *See Kaufman v. CVS Caremark Corp.*, 836 F.3d 88, 96-97 (1st Cir. 2016); *DiCroce v. McNeil Nutritionals, LLC*, 82 F.4th 35, 41 (1st Cir. 2023); *Burrell v. Staff*, 60 F.4th 25, 50 (3d Cir. 2023) ("[W]here [an] unjust enrichment claim rests on the same improper conduct as the underlying tort claim, the unjust enrichment claim will rise or fall with the underlying claim."); *Digit. Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365, 383 (5th Cir. 2020) (concluding that when an unjust enrichment claim is premised on allegations of illegal, wrongful, unethical, or otherwise unjust conduct, a finding that no such conduct occurred "necessarily dooms the unjust enrichment claim"); *Ruffin-Steinback v. dePasse*, 267 F.3d 457, 462-63 (6th Cir. 2001) (determining that where allegations supporting an unjust enrichment claim are duplicative or derivative of allegations under another claim that has been properly dismissed, the unjust enrichment claim may also be dismissed); *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 987 (8th Cir. 2008) ("[Plaintiff] bases its unjust enrichment claim on its allegations of fraud and other tortious conduct, including tortious interference.  Because there is no underlying fraud,

conversion, or other tort to support either the conspiracy or unjust enrichment claims, these claims must also fail."); *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 553-554 (8th Cir. 2008) (affirming dismissal of unjust enrichment claim by district court, which held that "without valid fraud claims, the investors could not recover for unjust enrichment").

[95]     Taken together, the prevailing approach indicates that when an unjust enrichment claim rests on the same alleged improper conduct underlying another cause of action, resolution of the related claim will be dispositive of the unjust enrichment claim.  Under this prevailing view, if an unjust enrichment claim is derivative of claims of fraudulent dealings and the court properly rejects those claims, then the claimant's theory of unjust enrichment is no longer viable.  To assess whether an unjust enrichment claim is derivative of a fraud-related claim, the court may compare the factual allegations underlying both claims.  *See Ruffin-Steinback*, 267 F.3d at 463; *Cleary*, 656 F.3d at 517-18.

[96]     Here, the Defendants' theory of unjust enrichment is based on alleged fraudulent dealings. *See* Appellees' Br. at 17-19 (citing RA, tab 8 ¶¶ 137-43 (Defs.' Answer & Countercl.)).  They allege that there was an agreement between Goodwind and the Defendants outside of their written contracts (i.e., the West Bay and Century Notes) by which (1) West Bay would never have to repay Goodwind under the West Bay Note, and (2) Goodwind would pay for a share of their operating expenses, taxes, and loans. *See, e.g.*, RA, tab 8 ¶¶ 35, 37, 48, 66, 72, 84, 93, 137-38 (Defs.' Answer & Countercl.).  The Defendants' unjust enrichment counterclaim is based on their allegation that Goodwind "fail[ed] to pay its share of the SFOB loan and other expenses."  Appellees' Br. at 17 (citing RA, tab 8 ¶¶ 137-43 (Defs.' Answer & Countercl.)).  The Defendants argue that "[b]oth West Bay and Century have been paying more than their proportionate share of the SFOB loan and other expenses [and] have in fact been paying for [Goodwind's] share of the SFOB loan and other expenses."  RA, tab 8 ¶ 140 (Defs.' Answer & Countercl.) (emphases omitted).  The

Defendants further contend that Goodwind "has received the benefits and has been unjustly enriched by having ownership of West Bay and SFOB without paying for its share of the SFOB loan and other expenses, at the expense of West Bay and Century." *Id.* ¶ 141 (emphases omitted). The Defendants argue that Goodwind "has retained the benefits of ownership of West Bay and SFOB and should pay for its share of the SFOB loan and other expenses, and must reimburse and pay restitution to West Bay and Century for their payments of [Goodwind's] share of the SFOB loan and other expenses" because it would be "inequitable and unjust" otherwise. *Id.* ¶¶ 142-43 (emphases omitted).

[97]     These allegations closely mirror those underpinning the Defendants' fraud-related counterclaims. *See id.* ¶¶ 72, 84, 93 (claiming Goodwind agreed to pay for a share of the SFOB loan and other expenses under fraud in the inducement, intentional misrepresentation, and negligent misrepresentation counterclaims); *id.* ¶ 66 (claiming West Bay "did not need to repay" Goodwind under the West Bay Note under fraud in the inducement counterclaim); *id.* ¶¶ 76, 87 (claiming Defendants have been paying for Goodwind's share without reimbursement under fraud in the inducement and intentional misrepresentation counterclaims); *id.* ¶¶ 64, 83, 92 (claiming Goodwind is the "true owner" of West Bay under fraud in the inducement, intentional misrepresentation, and negligent misrepresentation counterclaims); *id.* ¶ 73 (claiming Goodwind "did not perform its promises" under fraud in the inducement counterclaim); *id.* ¶ 87 (claiming West Bay has been harmed by paying for Goodwind's share under negligent misrepresentation counterclaim). The Defendants repeated the allegations of their fraud-related counterclaims to support their unjust enrichment counterclaim, without providing additional factual assertions to show that Goodwind conferred a benefit at their expense that would be inequitable to retain without compensating for its value. Accordingly, we hold that the Defendants' unjust enrichment counterclaim is derivative of its fraud-related counterclaims.

[98]     Because the trial court did not err in dismissing the Defendants' fraud-related counterclaims, their unjust enrichment claim fails as well.

### 4. The trial court did not err when it denied the Defendants' request for leave to amend their counterclaims

[99]     The Defendants' fourth argument is that the trial court erred in denying their request to amend their counterclaims. Appellees' Br. at 19.

[100]   The court may deny a party's request to amend their pleading under GRCP 15(a) for futility when the complaint as amended would be dismissed. *Lujan*, 2018 Guam 27 ¶ 13. In opposing Goodwind's motion to dismiss, the Defendants attached proposed amended counterclaims. *See* RA, tab 16 (Defs.' Opp'n to Pl.'s Mot. Dismiss, May 15, 2023), Ex. A (Proposed Answer & Am. Countercl.). As the trial court noted, the proposed amended counterclaims "appear almost identical to the [original] counterclaims." RA, tab 29 at 11 (Dec. & Order). On that basis, the court denied leave to amend, citing futility. *Id.*

[101]   The Defendants' proposed amended counterclaims do not cure the insufficiencies of their original counterclaims. In the proposed amended counterclaims, the Defendants still fail to plead their fraud and fraud-related counterclaims with sufficient particularity. *Compare* RA, tab 16, Ex. A ¶¶ 33, 35, 46, 64-65, 74-75, 80-135, 141, 144-54 (Proposed Answer & Am. Countercl.), *with* RA, tab 8 ¶¶ 35, 37, 48, 66-67, 76-77, 87-88, 93, 97-98, 114, 117, 125, 135, 137-38, 140-41 (Defs.' Answer & Countercl). Thus, the proposed amendments to these counterclaims would still be subject to dismissal. The trial court did not err in finding that amending these counterclaims would be futile.

[102]   Applying the prevailing view that an unjust enrichment claim premised on the same alleged fraudulent conduct cannot stand once the related fraud claims are properly dismissed, the Defendants' amended counterclaim for unjust enrichment would likewise be subject to dismissal.

Moreover, because we affirm the dismissal of Goodwind's claims, the Defendants' counterclaim for rescission of the Notes and "double recovery" under the Century Note are moot.[18] These circumstances support the trial court's conclusion that amendment would be futile.

[103]    As to the counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing, the proposed amended counterclaims do not affect the following analysis: (1) these counterclaims center on alleged agreements that are not included in the written terms of the Notes and are parol evidence; (2) the exceptions to the parol evidence rule do not apply; (3) the parol evidence should be excluded; and (4) we affirm the trial court's dismissal of these counterclaims. Thus, the trial court did not err in finding that amending these counterclaims would be futile.

## V.  CONCLUSION

### A.  Goodwind's Direct Appeal

[104]    The trial court's reference to extraneous facts when granting the Defendants' Rule 12(b)(6) motion to dismiss was harmless because its dismissal can be justified without reference to any extraneous matters. We do not treat the reference as a basis for conversion to summary judgment under Rule 12(c).

[105]    The trial court correctly held that the statute of limitations waivers in the West Bay and Century Notes are unenforceable under Guam law. Given the strong public policy interest in time limitations for civil actions and the statutory requirement that any exception be established by law, the four-year limitations period applies. The trial court's rejection of *Mailloux* as controlling was erroneous but not outcome-determinative, as we find sufficient grounds to depart from its holding. Goodwind's claims are barred by the statute of limitations, and dismissal was proper.

---

[18] *See, e.g.*, RA, tab 16 (Defs.' Opp'n to Pl.'s Mot. Dismiss, May 15, 2023), Ex. A ¶¶ 121, 126, 136-43 (Proposed Answer & Am. Countercl.).

**[106]** Amendment of Goodwind's complaint would be futile, as no amendment could cure the Notes being issued in or around May 2011 and this action being filed in January 2023. We deny its request for leave to amend its complaint.

**[107]** We **AFFIRM** the trial court's decision to grant the Defendants' motion to dismiss Goodwind's complaint.

## B. Defendants' Cross-Appeal

**[108]** The trial court did not err in dismissing the Defendants' fraud and fraud-related counterclaims. These claims failed to meet the heightened pleading standard, lacking the requisite specificity in identifying the actors and conduct involved. The allegations were conclusory and deficient in detail regarding the roles of specific Goodwind employees. We affirm the dismissal.

**[109]** The trial court erred in applying the parol evidence rule to exclude evidence of negligent misrepresentation because the parol evidence rule is a substantive principle of contract law that does not apply to tort actions. Still, the negligent misrepresentation counterclaim was not pleaded with sufficient particularity. Thus, we affirm its dismissal on that basis.

**[110]** We affirm the trial court's dismissal of the Defendants' counterclaims for breach of contract and breach of the covenant of good faith and fair dealing. The parol evidence rule properly barred extrinsic evidence offered to support these claims, which presume a valid contract rather than challenge its formation or validity. The validity and fraud exceptions do not apply.

**[111]** Although the trial court erred in dismissing the Defendants' unjust enrichment counterclaim on statute of limitations grounds, we affirm the dismissal on alternative grounds supported by the record. Under the prevailing view, we conclude that the unjust enrichment counterclaim fails because it is grounded in fraud and the related fraud-based counterclaims have been dismissed.

**[112]** Finally, we affirm the trial court's denial of leave to amend the counterclaims. The proposed amendments do not remedy the original pleading deficiencies and would be futile.

**[113]** We **AFFIRM** the trial court's decision to grant Goodwind's motion to dismiss the Defendants' counterclaims, and we **AFFIRM** the trial court's decision to deny the Defendants' request to amend their counterclaims.


| /s/ | /s/ |
|:---:|:---:|
| F. PHILIP CARBULLIDO | KATHERINE A. MARAMAN |
| Associate Justice | Associate Justice |


/s/
ROBERT J. TORRES
Chief Justice